Filed 8/25/16  P. v. Blackmon CA3

**NOT TO BE PUBLISHED**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# THIRD APPELLATE DISTRICT

## (Yolo)

----

|  |  |
|---|---|
| THE PEOPLE, | C078540 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF-12-1779) |
| v. | |
| MARCUS LEE BLACKMON, | |
| Defendant and Appellant. | |

On appeal from his convictions for various offenses arising from a shooting at a local bar, defendant Marcus Lee Blackmon challenges the sufficiency of the evidence supporting various gang-related enhancements and convictions, claims the trial court violated his constitutional rights by declining to grant immunity to a potential defense witness, contends the trial court made instructional and sentencing errors, and asserts there was juror misconduct.  We will modify the judgment to stay execution of defendant's sentence on a single count; otherwise, we affirm the judgment.

1

## FACTUAL AND PROCEDURAL BACKGROUND

Following the well-established rule of appellate review, we recite the facts in the light most favorable to the judgment. (*People v. Bogle* (1995) 41 Cal.App.4th 770, 775.) On the evening of August 27, 2011, Tony Mares was at a bar in Woodland, celebrating his sister's birthday with family and friends. As the evening progressed, Mares walked out of the bar through the rear patio and to the adjacent parking lot to join some friends who were smoking outside. After talking for a few minutes, Mares noticed another friend of his, engaged in a heated discussion with two men Mares did not know—defendant (also known as "G," Green or Green Eyes) and Jason Broadbent.[1] Defendant and Broadbent had gone to the bar together that night, where they were meeting some friends of Broadbent's. Defendant drove the car that he and Broadbent arrived in, and he parked in the lot behind the bar.

Mares's friend appeared uncomfortable while talking to Broadbent and defendant, so Mares approached and asked if everything was okay. Broadbent began "shouting and jumping all around" and asked Mares if he "wanted a problem." The next thing Mares knew, defendant had pulled out a gun, pointed it at Mares's head, then lowered it to Mares's lower body, and began shooting. Mares was shot in the legs repeatedly, with one bullet shattering his knee. Mares attempted to flee back into the bar while the shooting continued but he fell because of his wounds.

---

[1] Though Mares had identified defendant as the shooter and Broadbent as his acquaintance earlier, he was not able to identify defendant at trial. Mares described that it was the larger of the two men who had shot him. Another witness also described that the man who was shooting had a heavier build. At the time of trial, defendant had lost a significant amount of weight. There was and is no challenge to the identity of defendant as the perpetrator of the first round of shooting, although defendant did and does argue it was Broadbent and not defendant who committed the second round of shooting, as discussed in detail below.

Defendant retreated into the parking lot and, as other people at the bar attempted to assist Mares, defendant reached into the driver's side of the car, grabbed something from underneath the seat, turned around, and resumed shooting. After shots were fired from the area of the vehicle, Broadbent got into the passenger seat of the vehicle. During the second round of shooting, Mares was struck in the arm. The bullet that struck Mares went through his arm and hit the woman assisting him, Dawn Milliken, in the face. Defendant got into the driver's side of the vehicle and he and Broadbent drove away.[2]

When investigators processed the scene later that night, they found several .45-caliber cartridge casings of various brands and a live .45-caliber cartridge in the parking lot. Forensic examination revealed that the 13 cartridges were fired from at least two firearms, with seven being fired from a single Glock-type firearm and at least three (possibly all six) others fired from another single firearm. Of the recovered fired bullets, forensic examination revealed one was fired from a Glock-type weapon and the other four were not. Thereafter, officers searched defendant's residence, where they found a loaded .45-caliber handgun magazine in the trunk of a car. The magazine contained cartridges that came from three of the same manufacturers as the cartridges recovered after the shooting.

Defendant was charged with assault with a semiautomatic firearm (Pen. Code, § 245, subd. (b)) in counts 1 (first shooting of Mares), 4 (second shooting of Mares), and 5 (shooting of Milliken).[3] As to these assault charges, gang, firearm, and great bodily injury enhancements were also alleged. (§§ 186.22, subd. (b)(1), 12022.5, subd. (a),

---

[2] There was also witness testimony that it was the passenger who was shooting, but witnesses also identified the larger of the two men—defendant—as the shooter.

[3] Undesignated statutory references are to the Penal Code in effect at the time of the charged offenses unless otherwise stated.

12022.7, subd. (a).)[4]  Defendant was also charged with the attempted murders of Mares (count 2) and Milliken (count 3).  (§§ 21a, 187, subd. (a), 664, subd. (a).)  As to the attempted murder charges, enhancements for willful, deliberate, and premeditated attempted murder (§§ 189, 664, subd. (a)), criminal street gang activity (§ 186.22, subd. (b)(1), (5)), intentional and personal discharge of a firearm causing great bodily injury (§ 12022.53, subd. (d)), intentional and personal discharge of a firearm (§ 12022.53, subd. (c)), and personal use of a firearm (§ 12022.53, subd. (b)) were also alleged. Defendant was additionally charged with carrying a loaded firearm in a vehicle while an active participant in a criminal street gang (counts 6 and 7—§ 12031, subd. (a)(1), (2)(C)).  He was also charged with carrying a concealed firearm in a vehicle with a prior felony or weapons conviction (counts 8 and 9—§ 12025, subds. (a)(1), (b)(1)), possession of a firearm by a felon (counts 10 and 11—§ 12021, subd. (a)(1)), discharge of a firearm in a grossly negligent manner that could result in injury or death of a person (count 12— § 246.3), possession of ammunition by a person prohibited from owning or possessing a firearm (count 14—§ 12316, subd. (b)(1)) with gang enhancements alleged as to all these counts (§ 186.22, subd. (b)(1)).  Finally, in count 13, he was charged with criminal street gang activity.  (§ 186.22, subd. (a).)  He was also subject to two prior prison term enhancement allegations.  (§ 667.5, subd. (b).)

A jury found defendant guilty as charged as to all counts, and sustained all enhancements, save the prior prison term allegations, which were tried to the court and sustained.  Thereafter, the trial court granted defendant's motion for a new trial as to counts 8 and 9, which the People subsequently dismissed.  The trial court sentenced

---

[4]  Former section 12022 et seq. was repealed effective January 1, 2011, and operative January 1, 2012, as part of a nonsubstantive reorganization of the deadly weapon statutes. (Stats. 2010, ch. 711, § 4.)  It is now codified at section 25850, subdivisions (a) and (c)(3).  (Added by Stats. 2010, ch. 711, § 6, eff. Jan. 1, 2012.)

4

defendant to a cumulative determinate term of 33 years and an indeterminate term of 80 years to life.

## DISCUSSION

**1.0    Sufficiency of the Evidence**

Defendant challenges the sufficiency of the evidence supporting the gang enhancement on counts 1 through 5, 10 through 12, and 14, and his conviction for carrying a loaded firearm in a vehicle by an active participant in a criminal street gang in counts 6 and 7.  We conclude substantial evidence supports both the challenged enhancement and the challenged convictions.

In considering a claim challenging the sufficiency of the evidence in a criminal case, " ' "we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." ' " (*People v. McCurdy* (2014) 59 Cal.4th 1063, 1104.)  However, we do not determine "whether guilt is established beyond a reasonable doubt" but only "whether there is substantial evidence to support the conclusion of the trier of fact." (*People v. Redmond* (1969) 71 Cal.2d 745, 755.)  In this inquiry, "[e]vidence which merely raises a strong suspicion of the defendant's guilt is not sufficient to support a conviction." (*Ibid.*)  But, " 'circumstantial evidence and any reasonable inferences drawn from that evidence' " may be substantial evidence to support the conviction. (*People v. Clark* (2011) 52 Cal.4th 856, 943 (*Clark*).)  We apply the same standard in considering a challenge to the sufficiency of the evidence to support an enhancement. (*People v. Albillar* (2010) 51 Cal.4th 47, 59-60 (*Albillar*).)

1.1  Gang Enhancement

The jury sustained allegations that defendant committed counts 1 through 5, 10 through 12, and 14 "for the benefit of, at the direction of, or in association with any

criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members," thereby warranting application of a gang-sentencing enhancement.[5]  (§ 186.22, subd. (b)(1).)  Defendant does not challenge the sufficiency of the evidence supporting the first prong of this enhancement—that he committed the crimes "for the benefit of, at the direction of, or in association with any criminal street gang."  He contends, however, insufficient evidence supports the second prong—that he committed the crimes "with the specific intent to promote, further, or assist in any criminal conduct by gang members."  We find this contention to be meritless.

The gang enhancement "applies when a defendant has personally committed a gang-related felony with the specific intent to aid members of that gang."  (*Albillar*, *supra*, 51 Cal.4th at pp. 67-68.)  Thus, "if substantial evidence establishes that the defendant intended to and did commit the charged felony with known members of a gang, the jury may fairly infer that the defendant had the specific intent to promote, further, or assist criminal conduct by those gang members."  (*Id.* at p. 68.)  For example, *People v. Morales* (2003) 112 Cal.App.4th 1176, 1198, held there was substantial evidence to support the requisite finding of specific intent where the defendant knowingly committed the charged crimes in association with fellow gang members, even though he aided and abetted his codefendants rather than being a direct perpetrator of the charged crimes.  Similarly, in *People v. Villalobos* (2006) 145 Cal.App.4th 310, 322, there was substantial evidence to support a finding of the requisite specific intent where the defendant knew her codefendant was a gang member and she acted in concert with him in the commission of the charged crimes.  And *People v. Romero* (2006) 140 Cal.App.4th

---

[5] The jury also sustained the gang enhancement allegations on counts 8 and 9, but as those convictions were subsequently vacated and the counts dismissed, as stated above, we do not discuss them here.

15, 17-18, 20, upheld a gang enhancement where the defendant drove the car from which his fellow gang member shot the victims.

Defendant attempts to distinguish the instant case from *Morales*, *Villalobos*, and *Romero* because here there was no evidence defendant went to the bar to engage in a gang confrontation; the victim was not a gang member; the shooting was not in or near his gang's territory; and he did not wear gang colors, throw gang signs, or mention the gang's name. Rather, he claims the only evidence presented to support the intent prong of the gang enhancement is that another gang member (Broadbent) was present when defendant committed the charged crimes. Defendant does not explain, however, why that evidence in and of itself is insufficient.

Moreover, defendant's analysis disregards expert witness testimony that defendant and Broadbent were both members of the same gang—Zilla; that among the primary crimes committed by Zilla were assaults, witness intimidation, and murder; and that it is a common tactic for two Zilla members to work together with one being vocal and the other, who would normally be armed, to stay in the background until he stepped in to handle the threat in a violent manner. Defendant also disregards the evidence presented that Broadbent initiated the confrontation with Mares when he began "shouting and jumping all around" and asked Mares if he "wanted a problem." Additionally the expert witness testified that if a Zilla member felt disrespected in front of others, he would address that disrespect "swiftly and severely," and that it would be construed as a sign of disrespect if a third person intervened in a conversation the Zilla was having with another person.

Based on this evidence it would be reasonable to infer, for example, that Broadbent intended to engage in an assault of Mares and that defendant acted with the "specific intent to promote, further, or assist" in that criminal conduct when he pulled out a gun and shot Mares, and when he further shot into the crowd in a second round of

7

shooting to kill Mares.  It is also reasonable to infer that he possessed the guns and brought the ammunition with him that night in anticipation of acting to "promote, further, or assist" in criminal conduct involving his gang brethren.  Therefore, we conclude there was substantial evidence to support the jury's finding sustaining the gang enhancement allegations.  "That the evidence might also reasonably be reconciled with a contrary finding, as defendant argues, does not warrant reversal of the gang enhancement.  (*People v. Ferraez* (2003) 112 Cal.App.4th 925, 931 [appellate court does not reweigh evidence or redetermine issues of credibility].)"  (*People v. Ewing* (2016) 244 Cal.App.4th 359, 380.)

      1.2     Conviction for Carrying a Loaded Firearm in a Vehicle By an Active Participant in a Criminal Street Gang

To support defendant's conviction for a violation of section 12031, subdivision (a)(1) and (2)(C) as charged, there must be substantial evidence from which the jury could reasonably infer he carried a loaded firearm in a vehicle while in any public place or on any public street and is an active participant in a criminal street gang.[6]  (Stats. 2009, ch. 288, § 1.)  Here, defendant contends there was insufficient evidence that the firearms were loaded when inside the vehicle.  More specifically, he argues that "[w]hile it may be reasonably inferred that the two [semiautomatic] pistols were carried in a vehicle, there is no evidence by which it can be reasonably inferred that the two pistols were loaded with ammunition at the time they were carried in the vehicle."  We disagree.

The evidence presented at trial was that the first gun was on defendant's person, likely in his waistband, and that the defendant was able to shoot the gun "almost immediately."  Defendant asserts "[t]he magazine clip for the firearm could have been

---

[6]  Former section 12031 was repealed effective January 1, 2011, and operative January 1, 2012, as part of a nonsubstantive reorganization of the deadly weapon statutes.  (Stats. 2010, ch. 711, § 4.)  It is now codified at section 25850, subdivisions (a) and (c)(3).  (Added by Stats. 2010, ch. 711, § 5.)

8

inserted into the firearm at any point during the evening." However, there was no evidence that he had to load the gun before firing or that he had loaded the gun at any time while at the bar. The most reasonable conclusion to draw from this evidence is that the gun used in the first shooting was loaded while in the vehicle. With respect to the second gun, the evidence was that defendant reached under the seat of the car and began shooting again. If there had not been evidence that two different guns had been used in the two shootings, it may have been reasonable to conclude defendant was merely reloading his weapon. But, there is evidence of two different guns. Additionally, while we agree with defendant that it is theoretically possible he had the second gun on his person, but not loaded, and that he loaded it when he returned to the car, this is not the only inference that may be drawn from the evidence. Rather, it is more reasonable to infer that defendant drew a loaded firearm from the vehicle to conduct the second round of shooting. Though we agree the evidence is not conclusive, it does more than raise a strong suspicion of guilt. And, where " ' " 'the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding.' " ' " (*Clark*, *supra*, 52 Cal.4th at p. 945.) Accordingly, we conclude substantial evidence supports defendant's two convictions for carrying a loaded firearm in a vehicle in a public place as an active gang member.

## 2.0   Denial of Immunity

Broadbent was subpoenaed to testify at trial, but refused, invoking the Fifth Amendment. Defendant argued Broadbent could provide exculpatory testimony, namely that Broadbent committed the second round of shooting that injured Mares and Milliken. Disputing that claim, the prosecutor declined to grant transactional immunity, which declination the trial court deemed unobjectionable. The trial court also declined to confer "use immunity" to Broadbent despite defendant's request pursuant to *United States v.*

9

*Straub* (9th Cir. 2008) 538 F.3d 1147.  Defendant contends on appeal that the trial court erred in refusing to confer use immunity on Broadbent.  Recently, *People v. Masters* (2016) 62 Cal.4th 1019, 1051 held:  "California courts have no authority to confer use immunity on witnesses."  As defendant acknowledges, we are bound by this precedent.  (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)  We thus conclude the trial court did not err in declining to confer such immunity on Broadbent.

**3.0     Instruction on Lesser Included Offense**

Defendant contends the trial court prejudicially erred when it failed to instruct the jury *sua sponte* on the lesser included offense of attempted voluntary manslaughter because he claims there is sufficient evidence to support a finding defendant acted in the heat of passion during both shootings, or that he harbored an actual but unreasonable belief he needed to defend himself.  We conclude the trial court did not err in failing to instruct the jury sua sponte on the lesser included offense of attempted voluntary manslaughter.

"Voluntary manslaughter is a lesser included offense of murder when the requisite mental element of malice is negated by a sudden quarrel or heat of passion, or by an unreasonable but good faith belief in the necessity of self-defense."  (*People v. Gutierrez* (2003) 112 Cal.App.4th 704, 708 (*Gutierrez*).)  "*Provocation* has this effect [of mitigating the mental element] because of the words of section 192 itself, which specify that an unlawful killing that lacks malice because committed 'upon a sudden quarrel or heat of passion' is voluntary manslaughter.  [Citation.]  *Imperfect self-defense* obviates malice because that most culpable of mental states 'cannot coexist' with an actual belief that the lethal act was necessary to avoid one's own death or serious injury at the victim's hand."  (*People v. Rios* (2000) 23 Cal.4th 450, 461.)  Here, defendant contends the trial court should have instructed on both as to counts 2 and 3, in which he was charged with

10

attempted murder based on the second round of shooting in which Mares and Milliken were struck.

"The trial court must instruct sua sponte on 'lesser included offenses if the evidence "raises a question as to whether all of the elements of the charged offense are present and there is evidence that would justify a conviction of such a lesser offense." ' " (*People v. Hamlin* (2009) 170 Cal.App.4th 1412, 1456.) For a sua sponte instruction on a lesser included offense to be required, however, there must be " 'evidence that a reasonable jury could find persuasive' on the point." (*Id.* at p. 1455.) "[T]he existence of '*any* evidence, no matter how weak' will not justify instructions on a lesser included offense, but such instructions are required whenever evidence that the defendant is guilty only of the lesser offense is 'substantial enough to merit consideration' by the jury. [Citations.] 'Substantial evidence' in this context is ' "evidence from which a jury composed of reasonable [persons] could . . . conclude[]" ' that the lesser offense, but not the greater, was committed." (*People v. Breverman* (1998) 19 Cal.4th 142, 162.)

### 3.1 Heat of Passion

"To establish voluntary manslaughter under a heat of passion theory, both provocation and heat of passion must be found. [Citation.] 'First, the provocation which incites the killer to act in the heat of passion case must be caused by the victim or reasonably believed by the accused to have been engaged in by the decedent. [Citations.] Second, . . . the provocation must be such as to cause an ordinary person of average disposition to act rashly or without due deliberation and reflection.' " (*Gutierrez*, *supra*, 112 Cal.App.4th at pp. 708-709.) The same must be shown when relying on heat of passion as a partial defense to attempted murder. (*Id.* at p. 709.)

"[A] voluntary manslaughter instruction is not warranted where the act that allegedly provoked the killing was no more than taunting words, a technical battery, or slight touching. [Citation.] 'The provocation must be such that an average, sober person

11

would be so inflamed that he or she would lose reason and judgment. Adequate provocation and heat of passion must be affirmatively demonstrated.' " (*People v. Gutierrez* (2009) 45 Cal.4th 789, 826.) Here, there was some evidence defendant and Broadbent felt they were being disrespected because they were not being served at the bar. The evidence also shows Mares approached defendant and Broadbent, who were engaged in a heated conversation with Mares's friend, and asked if everything was all right. Broadbent then reacted by shouting and jumping up and down, and defendant reacted by pulling out a gun, aiming at Mares's head, then lowering it to shoot him in the legs (the first round of shooting). Then, after defendant had retreated to his car and Mares lay on the ground bleeding, defendant shot from a distance in Mares's direction (the second round of shooting). On this evidence, where there is no indication there was any provocation of defendant other than potentially taunting words, the trial court did not err in failing to instruct the jury sua sponte as to voluntary manslaughter based on heat of passion.

3.2    Imperfect Self-defense

"Imperfect self-defense is the killing of another human being under the actual but unreasonable belief that the killer was in imminent danger of death or great bodily injury. [Citation.] Such a killing is deemed to be without malice and thus cannot be murder." (*People v. Booker* (2011) 51 Cal.4th 141, 182.) Additionally, the doctrine of imperfect self-defense only applies "when the defendant fears immediate harm that ' " ' *must be instantly dealt with.*' " ' " (*People v. Rogers* (2006) 39 Cal.4th 826, 883.) Here, even though the trial court found there was sufficient evidence to warrant an instruction on self-defense with respect to count 1 (involving the first shooting), there was no evidence to suggest defendant still believed he was in imminent danger of death or bodily injury once he had shot Mares and retreated to his own car. There was no evidence anyone was pursuing defendant or Broadbent at that point, but there was evidence people were fleeing in the opposite direction—into the bar—and that Mares was lying on the ground

12

bleeding. Accordingly, we find the trial court did not err in failing to instruct the jury sua sponte as to counts 2 and 3 on the lesser included offense of voluntary manslaughter on the theory of imperfect self-defense.

## 4.0    Motion for New Trial

Defendant moved for a new trial based on a claim of juror misconduct. The trial court denied the motion, finding the juror's declaration that supported the motion did not present evidence of juror misconduct. Defendant contends the trial court erred in denying his motion for new trial because there was evidence the jury refused to deliberate, and that this juror misconduct requires reversal of his conviction. We disagree.

### 4.1    Additional Background

The juror supporting defendant's motion for a new trial declared, in pertinent part, as follows:

"4. That over the weekend after rendering the verdict I continued to think about the facts of the case and now believe that there was not enough evidence to convict [defendant] for the crimes arising out of the second set of shots.

"5. That as soon as the jurors entered the jury room, the other jurors wanted to convict on both sets of shots right away.

"6. That when I started asking questions and suggesting that we should review the evidence, the other jurors looked at me as if to say, 'you've got to be kidding.'

"7. That the foreperson, a male who was younger than me and sat behind me, said to me at one point 'in my sixth grade calculation' he thought [defendant] was guilty on the second round of shots.

"8. That the foreperson was very condescending to me, and that because of that, I felt intimidated and pressured during the deliberations.

13

"9.  That only one other juror agreed that we should take more time to review any of the statements or evidence . . . .

"10.  That the foreperson and other jurors kept putting me down and acting like it was a big deal that I kept asking questions.

"11.  That I kept telling the jurors that I needed more time to think about the facts of the case, but was treating as if I was wasting their time.

"12.  That it was clear to me that the other jurors had decided [defendant's] guilt before entering into deliberations."

The trial court excluded paragraphs 4 through 6, 8, and 10 through 12 as either being improper opinion testimony or running afoul of Evidence Code section 1150.  The trial court then found the only remaining pertinent paragraphs, 7 and 9, did not "indicate[] that there is any substantial likelihood of prejudice in the deliberative process."  Rather, stated the trial court, the declaration reflects "the typical airing of opinions during deliberations, and it also describes a commitment to spend whatever time is necessary to evaluate all the evidence in the case."

4.2    Analysis

A motion for new trial premised on a claim of jury misconduct involves a "three-step" analysis.  The trial court must first determine the admissibility of evidence submitted with the motion.  Only then does it determine if the facts in the admissible evidence establish a presumption of misconduct.  Finally, it evaluates whether this presumption is rebutted, i.e., if it is not prejudicial.  (*People v. Vigil* (2011) 191 Cal.App.4th 1474, 1483.)  Although ordinarily we review a trial court's determination on a motion for new trial for abuse of discretion, the finding of error— whether a presumption of misconduct arose—and the finding of whether the People rebutted it are the subject of our review de novo.  (*People v. Collins* (2010) 49 Cal.4th 175, 242 & fn. 31 (*Collins*); *People v. Nesler* (1997) 16 Cal.4th 561, 582 & fn. 5.)

14

With respect to the initial step, only otherwise admissible evidence of objectively ascertainable overt acts is admissible as proof of jury misconduct; evidence of subjective reasoning is not—indeed, it is without any substantive "jural consequence." (*People v. Steele* (2002) 27 Cal.4th 1230, 1261, 1264; *People v. Hill* (1992) 3 Cal.App.4th 16, 30; Evid. Code, § 1150 ["[A]ny otherwise admissible evidence may be received as to statements made, or conduct, conditions, or events occurring . . . of such a character as is likely to have influenced the verdict improperly. No evidence is admissible to show the effect of such statement, conduct, condition, or event upon a juror either in influencing him to assent to or dissent from the verdict or concerning the mental processes by which it was determined."].) A trial court must be exacting in applying these criteria. (*Collins*, *supra*, 49 Cal.4th at p. 249.) We review the admission of evidence of misconduct for an abuse of discretion (*Barboni v. Tuomi* (2012) 210 Cal.App.4th 340, 345), which is established where a trial court does not apply the law correctly (*People v. Hume* (2011) 196 Cal.App.4th 990, 995).

We first consider whether the trial court abused its discretion in excluding paragraphs 4 through 6, 8, and 10 through 12. With respect to paragraph 4, whether the juror changed her mind *after* deliberations had concluded and the verdict was entered is not relevant to the inquiry at hand—i.e., whether a juror or jurors committed misconduct *during* deliberations. Additionally, the paragraph implies that the juror changed her mind, which indicates she believed there *was sufficient evidence to convict* at the time the jury rendered its verdict. Thus, the trial court did not err in excluding this paragraph.

With respect to the paragraphs 5, 6, 8, 10, 11, and 12, the juror's declaration does not convey "statements made, or conduct, conditions, or events occurring . . . of such a character as is likely to have influenced the verdict improperly" (Evid. Code, § 1150) but rather conclusions based on the juror's perception of unrelayed statements and conduct. For example, paragraph 5 states that "the other jurors wanted to convict on both sets of

15

shots right away," but that is merely the juror's conclusion; it does not convey what statements or conduct occurred in the jury deliberations that caused the declaring juror to reach this conclusion. Similarly, paragraph 6 indicates "the other jurors looked at me *as if to say*, 'you've got to be kidding' " (italics added), but again that is merely this juror's perception; it does not state, for example, that the jurors rolled their eyes at her, scoffed, or actually stated "you've got to be kidding." Those would be facts relaying statements or conduct, which may be admissible. The same holds true for the juror's perception that the foreperson was "condescending" (par. 8), that all the jurors were "putting [her] down" (par. 10), "acting like it was a big deal" (par. 10), or "treat[ing her] as if [she] was wasting their time" (par. 11), and that it was "clear to [her] that the other jurors had decided [defendant's] guilt before entering into deliberations" (par. 12). These are all conclusions based on the juror's perception, evidently based on some statements or conduct, but because the declaration does not communicate what those statements or conduct are, the paragraphs are properly excluded because they merely communicate the *effect* of the unconveyed statements and conduct on this juror. (Evid. Code, § 1150.) Therefore, the trial court did not abuse its discretion in excluding these paragraphs either.

That leaves paragraphs 7 and 9, which the trial court admitted into evidence. Assuming without deciding that these paragraphs were properly admitted, they do not raise a presumption of misconduct. Defendant contends the declaration proves the jurors prejudged the case and refused to deliberate. We are not persuaded. Paragraph 7 merely communicates that the foreperson believed defendant was guilty at some point and stated as much to the declaring juror. While it may be misconduct for a juror, while the trial is ongoing, to prejudge the case (see *Grobeson v. City of Los Angeles* (2010) 190 Cal.App.4th 778, 794), paragraph 7 does not provide evidence of prejudgment. Rather it states that "at one point" the foreperson expressed to the declaring juror his belief of defendant's guilt. The statement does not express an unwillingness to consider

16

evidence or a failure to deliberate or a prejudgment of guilt. Therefore, paragraph 7 does not raise a presumption of juror misconduct. And paragraph 9 does not indicate that any of the jurors refused to deliberate, which would be juror misconduct. (*People v. Leonard* (2007) 40 Cal.4th 1370, 1410-1411.) Rather, paragraph 9 indicates that at least one other juror wanted additional time to deliberate. It does not indicate the jurors were denied additional time to consider the evidence, nor that the other jurors had refused to deliberate at all. Indeed, jury deliberations were conducted over the course of two days, with the jury posing multiple questions to the court and receiving readback of testimony. Thus, defendant has failed to show juror misconduct occurred in the instant case.

## 5.0    Sentencing

Defendant contends his sentence on count 4 for assault with a semiautomatic firearm should have been stayed pursuant to section 654 because it arose from the same course of conduct and was motivated by a single criminal objective as the attempted murder for which he was convicted and sentenced in count 2.[7] The People agree, as do we. Both are based on the second shooting in which Mares was hit in the arm region, for which defendant was also convicted of attempted murder. With respect to count 5 (shooting of Milliken), the trial court recognized this fact, stating "Count 5 involves the second round of shooting. This is the same behavior that was punished by the attempted murder charges. So all of these sentences will be stayed pursuant to [section] 654." The same logic applies to count 4. Therefore, as there was a single course of conduct motivated by the same criminal objective underlying both counts 2 and 4, we agree defendant cannot be punished for both crimes. (See *People v. Lewis* (2008) 43 Cal.4th

---

[7] Initially, defendant also asserted that the trial court had erred in imposing a consecutive 16-month term for the gang enhancement because that is one-third of the *upper* term and not one-third of the *middle* term. However, he withdrew that claim in his reply brief. Therefore, we do not address it.

415, 519.)  Accordingly, defendant's sentence of 29 years concurrent imposed as to count 4 is stayed pursuant to section 654.

## DISPOSITION

The judgment is modified to stay defendant's sentence on count 4.  As modified, the judgment is affirmed.  The trial court is directed to prepare an amended abstract of judgment and send a certified copy to the Department of Corrections and Rehabilitation.

                                                            BUTZ            , J.


We concur:


        BLEASE            , Acting P. J.


        RENNER            , J.