[No. A128757. First Dist., Div. Four. June 21, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
EDWARD DUFF HUME, Defendant and Appellant.

COUNSEL

Jeremy Price, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Gregg Zywicke and Allan Yannow, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**REARDON, Acting P. J.**—Convicted of embezzlement by an employee with an excess taking clause allegation (Pen. Code,[1] §§ 487, subd. (a), 506, 12022.6, subd. (a)), appellant and former licensed attorney Edward Duff Hume was ordered to pay victim restitution to several persons, including two who had received some reimbursement from the California State Bar's Client Security Fund (CSF). Appellant challenges that aspect of the restitution order, urging that the trial court should have reduced the amount of restitution to those victims by the amount each received from the CSF. He offers several reasons for this proposition: (1) the CSF is a legislative creature, specifically established for the purpose of compensating victims for losses attributable to attorney dishonesty; (2) the victims had assigned their right to compensation directly from appellant to the CSF; and (3) the State Bar has statutory subrogation rights to recover from him the amount of the CSF awards. We conclude that appellant is not entitled to any offset in the amount of the actual restitution award; however, as we further explain, he will not be required to pay twice for his misconduct. Accordingly, we affirm the judgment.

## I. FACTS

In March 2009, the San Mateo County District Attorney filed an information charging appellant Edward Duff Hume with one count of embezzlement by an employee in excess of $400, with an allegation that the taking was in excess of $200,000; two counts of grand theft; one count of second degree burglary; and two counts of forgery. Appellant pleaded nolo contendere to the embezzlement count and admitted the excess taking enhancement. The court dismissed the other counts subject to a *Harvey*[2] waiver, thus allowing the court to consider them at the time of sentencing. Appellant received a four-year sentence—two years for the embezzlement and two years for the excess taking clause.

---

[1] Unless otherwise noted, all statutory references are to the Penal Code.

[2] *People v. Harvey* (1979) 25 Cal.3d 754 [159 Cal.Rptr. 696, 602 P.2d 396].

The court referred the matter to the probation department to prepare a restitution report. According to the report, appellant was an attorney who managed family trusts for both Raymon Long and Debra Tucker, who were victims in the dismissed counts. In May 2006, appellant asked Long and Tucker if he could borrow $55,000 and $45,000, respectively, from the trusts of which they were trustees. Appellant said he needed the money to fix up his house. Long and Tucker signed documents prepared by appellant memorializing the terms. Appellant made two interest/loan fee payments in the amount of $495 on the loans, but never paid on the principal. The victims applied to the CSF for reimbursement for their losses; Long recovered $50,000 from the fund and Tucker received $45,000.

At the restitution hearing, the court ordered appellant to pay $1,260,115.14 to the Frederick D. Helversen Living Trust as victim restitution on the charge for which he now stands convicted;[3] $55,000 to Long; and $45,000 to Tucker. The court also issued a written decision addressing, among other points, the issue of offset for the CSF payments to Long and Tucker. The court reasoned that although trial courts normally will credit a defendant for payments made to a victim from the defendant's *own* insurance company,[4] the payments the CSF made to the victims are not equivalent to those in *Bernal* or its progeny such that appellant would be entitled to an offset.

## II. DISCUSSION

We review the trial court's allocation of responsibility for restitution for an abuse of discretion, mindful that an order resting on a demonstrable legal error constitutes such an abuse. (*People v. Jennings* (2005) 128 Cal.App.4th 42, 49 [26 Cal.Rptr.3d 709].)

### A. *Restitution Principles*

■ A victim's right to restitution from the person convicted of the crime causing his or her economic loss is enshrined in article I, section 28, subdivision (b)(13) of our state Constitution. In addition to compensating victims, the restitution mandate serves rehabilitative and deterrent purposes. (*In re Brittany L.* (2002) 99 Cal.App.4th 1381, 1387 [122 Cal.Rptr.2d 376].)

■ Section 1202.4, the general restitution statute, states the legislative intent that "a victim of crime who incurs any economic loss as a result of the commission of a crime shall receive restitution directly from any defendant

---

[3] Appellant does not contest the restitution order as to the Frederick D. Helversen Living Trust.

[4] Citing *People v. Bernal* (2002) 101 Cal.App.4th 155 [123 Cal.Rptr.2d 622] (*Bernal*).

convicted of that crime." (§ 1202.4, subd. (a)(1).) Accordingly, the trial court *shall order* any defendant so convicted to pay restitution to the victim. (*Id.*, subds. (a)(3)(B), (f).) When the defendant enters a negotiated disposition, with counts dismissed subject to a *Harvey* waiver, the court can consider the dismissed counts for purposes of sentencing and restitution. (§ 1192.3; *People v. Ozkan* (2004) 124 Cal.App.4th 1072, 1074 [21 Cal.Rptr.3d 854].)

■ In determining restitution pursuant to section 1202.4, the amount ordered "shall not be affected by the indemnification or subrogation rights of any third party." (§ 1202.4, subd. (f)(2).) Further, to the extent possible, the restitution order shall be for the full amount of the victim's economic loss. (*Id.*, subd. (f)(3).) As our Supreme Court explained in connection with a prior version of the relevant statutory provisions which remain substantively unchanged under section 1202.4, "the Legislature intended to require a probationary offender, for rehabilitative and deterrent purposes, to make full restitution for all losses his crime had caused, and that such reparation should go entirely to the individual or entity the offender had directly wronged, regardless of that victim's reimbursement from other sources. Only the [state] Restitution Fund was eligible to receive any part of the full restitutionary amount otherwise due to the immediate victim." (*People v. Birkett* (1999) 21 Cal.4th 226, 246 [87 Cal.Rptr.2d 205, 980 P.2d 912], italics omitted; see *People v. Millard* (2009) 175 Cal.App.4th 7, 26 [95 Cal.Rptr.3d 751].)

■ Consistent with the statute, payments to the victim by the victim's *own insurer* as compensation for economic losses attributed to a defendant's criminal conduct *may not* offset the defendant's restitution obligation. (*People v. Hamilton* (2003) 114 Cal.App.4th 932, 935, 940–941 [8 Cal.Rptr.3d 190]; *People v. Hove* (1999) 76 Cal.App.4th 1266, 1272 [91 Cal.Rptr.2d 128].) And, although a restitution order is not intended to give the victim a windfall (*People v. Millard, supra*, 175 Cal.App.4th at p. 28), a third party source which has reimbursed a direct victim for his or her loss may pursue its civil remedies against the *victim or perpetrator*. "[T]he possibility that the victim may receive a windfall because the third party fails to exercise its remedies does not diminish the victim's right to receive restitution of the full amount of economic loss caused by the perpetrator's offense." (*People v. Duong* (2010) 180 Cal.App.4th 1533, 1537–1538 [103 Cal.Rptr.3d 678].)

■ However, payments to the victim by a defendant's *own insurer* do entitle a defendant to an offset against his or her restitution obligation. Payments by a company insuring a defendant are payments *directly from the defendant* within the meaning of section 1202.4, subdivision (a)(1). (*Bernal, supra*, 101 Cal.App.4th at pp. 167–168.) The *Bernal* court reasoned that payments from the defendant's own insurance company are different from other sources of victim reimbursement because (1) the defendant purchased

the insurance, and the payments are not fortuitous but rather are precisely what the defendant bargained for; (2) the defendant paid premiums to keep the policy in force; (3) the defendant has a contractual right to have the insurance company make payments to the victim on his or her behalf; and (4) the insurance company has no indemnity or subrogation rights against the defendant. (*Ibid.*)

The *Bernal* reasoning was extended, by a divided court, in *People v. Jennings, supra,* 128 Cal.App.4th 42. There, the defendant pleaded guilty to driving under the influence with great bodily injury. The reviewing court determined, contrary to the trial court's finding, that the defendant was an insured under the operative automobile insurance policy, as well as his mother. (*Id.* at pp. 48, 53.) The insurer settled the victim's civil suit and released the defendant and his mother from civil liability. (*Id.* at p. 47.) The majority determined that the relevant *Bernal* inquiry is "whether the defendant has obtained insurance, and is thus an 'insured,' and not the manner by which the insured procured the insurance coverage or how much he may have paid for it. . . . [Citation.] . . . [R]ather than try to determine how the insurance was procured, a court must determine simply whether or not the insurer's payments to the victim were made on behalf of the defendant as a result of the defendant's status as an insured." (*People v. Jennings, supra,* at pp. 56–57, fn. omitted.) With this analysis, the court concluded that the defendant was entitled to offset a portion of the insurer's payment to the victim against his restitution obligation. (*Id.* at p. 57.)

*People v. Short* (2008) 160 Cal.App.4th 899 [73 Cal.Rptr.3d 154], another drunk driving with injury case, represents a further extension of *Bernal.* The defendant in *Short* was driving his employer's vehicle, acting within the course and scope of his employment, at the time of the accident. The employer's insurer settled the victim's personal injury action against the employer and the defendant. The defendant did not procure the insurance policy or pay premiums for it, and his name was not on the policy; however, the terms of the policy covered him while driving the employer's vehicle. Further, the settlement listed the defendant as released from any claims in connection with the accident that caused the victim's injuries. Therefore, the court concluded the settlement paid to the victim was restitution directly from the defendant within the meaning of section 1202.4, subdivision (a)(1). (*People v. Short, supra,* at pp. 901, 905.) The court reasoned that although the defendant's name was not listed as an insured under the policy, he belonged to the class of insureds covered by it. Therefore, the carrier was contractually obligated to compensate the victim on behalf of the defendant as well as his employer. (*Ibid.*) Additionally, no fortuitous windfall inured to the defendant's benefit. The employer's procurement of the insurance policy to cover

losses incurred by employees in the course of discharging their duties was an employment benefit as contemplated by the indemnification requirements of the Labor Code. (*Ibid.*)

On the other hand, *Bernal* was deemed not applicable in *People v. Hamilton, supra,* 114 Cal.App.4th 932, in which the victim, shot and injured while working for the defendant and his mother, sued the culprit and his mother. The mother's insurer settled the claim on her behalf, obtained the release of claims against her as well as dismissal of the lawsuit against both defendants. The reviewing court held that payments to the victim by the mother's insurer may not reduce the defendant's restitution obligation. (*Id.* at pp. 935, 943.) Unlike the *Bernal* situation, the payments were due to fortuitous circumstances (the mother had insurance and the policy covered the defendant's acts); the defendant neither procured nor maintained the operative insurance policy and had no contractual right to require payments to be made on his behalf; and there was potential for an indemnity claim by the insurer against the defendant. (*People v. Hamilton, supra,* at pp. 941–942.) The settlement was made on the mother's behalf, not directly on behalf of the defendant, and therefore could not offset his restitution responsibility. (*Id.* at p. 943; see also *In re Tommy A.* (2005) 131 Cal.App.4th 1580, 1590 [33 Cal.Rptr.3d 103].)

## B. *CSF*

Legislation authorizing creation of the CSF was enacted in 1971. (Bus. & Prof. Code, § 6140.5; *Saleeby v. State Bar* (1985) 39 Cal.3d 547, 555 [216 Cal.Rptr. 367, 702 P.2d 525].) The purpose of the fund is "to relieve or mitigate pecuniary losses caused by the dishonest conduct of active members of the State Bar." (Bus. & Prof. Code, § 6140.5, subd. (a).) To fund the CSF, the State Bar Board of Governors may increase annual membership fees by up to $40 per active member of the bar, and up to $10 per inactive member. (*Id.,* § 6140.55.) To administer the fund, the board has established a seven-member CSF Commission (Commission), which has the final authority to grant an application for reimbursement. (Rules of State Bar,[5] tit. 3, div. 4, ch. 1, rule 3.421(A) [former rules 11, 12].)

In order to qualify for reimbursement from the fund, the applicant must establish a loss of property or money that came into the hands of an active member of the bar through dishonest conduct, while the member was serving as an attorney or in a fiduciary capacity. (Rule 3.430(A), (B) [former

---

[5] All references to rules are to the Rules of the State Bar. The rules were reorganized, simplified and revised in July 2007, and hence the former scheme was in effect at the operative times of these proceedings. However, the substance of the rules referenced in this opinion has not changed in any respect.

rule 2].) " 'Dishonest conduct' " includes "[t]heft or embezzlement of money" and "the wrongful taking or conversion of money or property . . . ." (Rule 3.431(A) [former rule 6(a)].) The Commission's decision to reimburse a loss must be founded on a preponderance of the evidence. (Rule 3.441(I) [former rule 15(e)].) The final decision of the Commission, which may include directing reimbursement from the fund, constitutes the final action of the State Bar. (Rule 3.444(B), (C) [former rule 15(c)].) Both applicant and attorney may request superior court review of a final decision to grant or deny reimbursement, pursuant to Code of Civil Procedure section 1094.5. (Rule 3.450 [former rule 17].)

 Business and Professions Code section 6140.5 provides that upon payment to an applicant, the State Bar becomes statutorily subrogated (to the extent of payment) to the rights of the victim/applicant against the person/persons who caused the pecuniary loss, and may bring an action to enforce those rights within three years of such payment. (*Id.*, subd. (b); *State Bar of California v. Statile* (2008) 168 Cal.App.4th 650, 662 [86 Cal.Rptr.3d 72].) As a condition of continued practice, the attorney prompting the CSF payment must reimburse the fund or, where the member has resigned with charges pending[6] or been suspended or disbarred, as a condition of reinstatement of membership. (Bus. & Prof. Code, § 6140.5, subd. (c).) The rules unconditionally state that an attorney must repay the fund for any reimbursement made, with simple interest plus processing costs. (Rule 3.451 [former rule 5(b)].)

By statute and rule, all CSF payments made by the State Bar are entirely discretionary. (Bus. & Prof. Code, § 6140.5, subd. (a); rule 3.420(B) [former rule 2].) Further, no one has a right to reimbursement or payment from the fund, or any right in the fund as a creditor, third party beneficiary, or otherwise. (Rule 3.420(C) [former rule 2].) In making payments through the CSF, the State Bar is neither an insurer nor a surety, and as subrogee it has no contractual relationship with the attorney who committed the wrongdoing; simply put, there is no contractual obligation to pay the dishonest attorney's debt. (*State Bar of California v. Statile, supra,* 168 Cal.App.4th at pp. 666–668.)

C. *Appellant Is Not Entitled to an Offset*

 At the outset we point out the obvious, namely, that appellant fails the *Bernal* test. He has no status with the CSF or State Bar as an insured or member of a class of insureds, and, patently, payments by the State Bar to the victims were not payments directly from appellant within the meaning of

---

[6] Appellant resigned with charges pending effective April 17, 2008.

section 1202.4, subdivision (a)(1). These payments were, moreover, fortuitous because the decision to reimburse was solely within the State Bar's discretion. Further, appellant had no contractual right to compel reimbursement from the fund. And finally, the State Bar has statutory subrogation rights against appellant.

Conceding that he cannot surmount the *Bernal* offset test, appellant pursues a different tack, positing that the purpose of the state's restitution scheme is not undermined by allowing an offset for CSF payments to the victims. He argues that the primary purpose of restitution is to make the victim whole, and here, the CSF payments substantially compensated Long and Tucker for the monetary losses occasioned by his misdeeds. However, above and beyond victim compensation, restitution serves rehabilitative and deterrent purposes. Further, it is settled that the trial court can order a defendant to pay the full amount of the victim's economic loss, notwithstanding that the victim has also been reimbursed by a third party source such as the victim's insurer. (See, e.g., *People v. Hamilton, supra,* 114 Cal.App.4th at pp. 943–944; *People v. Hove, supra,* 76 Cal.App.4th at p. 1272.)

Appellant also points out that as a condition of receiving CSF funds, Long and Tucker assigned their rights against him to the State Bar to the extent of CSF payments to them. He emphasizes that the legislative creation of the very restitution fund that accepted the victims' assignment of their rights to recover directly from him distinguishes this case from those involving victim-purchased insurance where no offset is permitted. In essence, he suggests that the section 1202.4, subdivision (f)(2) directive to ignore indemnification and subrogation when fixing the amount of restitution should only pertain to the latter situation, not the former. However, the fact remains that the State Bar has total discretion to pay a claim or not, and no claimant has a contractual right to CSF restitution.

In the same vein appellant suggests that because the legislation contemplates that the victims will assign their rights to recover directly from the wrongdoers, somehow the state has also recognized that payments from the CSF to make a victim whole also satisfy the defendant's rehabilitative and deterrent debt to society. We cannot agree. Nothing in the statute or the rules suggests that the CSF furthers any purpose other than victim compensation.

Additionally, appellant asserts that the likelihood the State Bar will obtain a judgment against him for the full amount of the CSF payments, as allowed under Business and Professions Code section 6140.5, subdivision (b), favors

permitting an offset in this case.[7] As a result, he complains, he will be forced to pay twice for the same loss, an untenable result. Not so.

First, we point out that a restitution order under section 1202.4, subdivision (f) "shall be enforceable *as if the order were a civil judgment.*" (§ 1202.4, subd. (i), italics added.) "The making of a restitution order pursuant to subdivision (f) shall not affect the right of a victim to recovery from the Restitution Fund as otherwise provided by law, except to the extent that restitution is actually collected pursuant to the order. *Restitution collected pursuant to this subdivision shall be credited to any other judgments for the same losses obtained against the defendant arising out of the crime for which the defendant was convicted.*" (*Id.*, subd. (j), italics added.) Although subdivision (j) initially references recovery from the Restitution Fund, the second sentence broadly encompasses *any other judgments* entered for the same loss and thus prevents improper duplicative reimbursement by the defendant. (See *Vigilant Ins. Co. v. Chiu* (2009) 175 Cal.App.4th 438, 446 [96 Cal.Rptr.3d 54].)

In *Vigilant*, the victim's insurer paid its insured under a policy of crime insurance and then sued the defendant. Meanwhile, a restitution order was entered against the defendant for the full amount of the victim's economic loss. The defendant argued that since the victim had assigned all of its rights against him to the insurer, including its rights under the restitution order, the insurer already had what amounted to a judgment against the defendant in the form of the restitution order. (Recall, a restitution order is enforceable as a civil judgment (§ 1202.4, subd. (i)).) Concluding that section 1202.4 does not preclude entry of a civil judgment for economic losses that may also be subject to the criminal restitution order, the court additionally dispatched the defendant's arguments about duplicate recovery and duplicative defendant reimbursement, citing section 1202.4, subdivision (j). (*Vigilant Ins. Co. v. Chiu, supra*, 175 Cal.App.4th at p. 446.) It further held that irrespective of a restitution order, a victim has the right to pursue a civil remedy "subject only to the requirement that the civil judgment credit any amounts paid under the restitution order." (*Id.* at p. 444.) This same rationale should apply to the victim's assignee or subrogee.

Just like the insurer in *Vigilant*, here the State Bar received a broad assignment of the victim/applicants' rights against appellant to the extent of payments under the CSF. The assignment reached the victim/applicants' "claims, lawsuits and judgments" against all persons responsible for the dishonest acts. Presumably, the assignment would reach the restitution order,

---

[7] The State Bar has three years from the date of payment to bring an action to enforce its subrogation rights. (Bus. & Prof. Code, § 6140.5, subd. (b).) The State Bar made CSF payments to the victims by checks dated July 2, 2008.

as it did in *Vigilant*. Thus, should the State Bar exercise its assignment and subrogation rights and obtain a judgment against appellant to the extent of amounts paid to the victims under the CSF, that judgment would credit any amounts actually collected pursuant to the restitution order.

### III. DISPOSITION

The judgment is affirmed.

Sepulveda, J., and Rivera, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 28, 2011, S195119.