Filed 7/29/22  P. v. Escobedo-Yagut CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>MILSON EDUARDO ESCOBEDO-YAGUT,<br><br>      Defendant and Appellant. | A163707<br><br>(Sonoma County<br>Super. Ct. No. SCR7388921) |

Milson Eduardo Escobedo-Yagut[1] pled no contest to leaving the scene of an accident after he made a U-turn in his car, collided with a passing motorcycle, and drove off without providing his information. The trial court ordered him to pay restitution as a condition of probation to the motorcycle's passenger, J.M., for her losses from the car accident. Escobedo-Yagut now challenges the restitution condition on the grounds that it is improper under Penal Code[2] section 1203.1 and that it violates the prohibition against excessive fines in the state and federal Constitutions. We affirm the order.

---

[1] Although defendant was named in the felony complaint as Eduardo Wilson Escobedo-Yagut, he signed and initialed the "Advisement of Rights, Waiver and Plea Form—Felonies" as Milson Eduardo Escobedo-Yagut.

[2] All further statutory references are to the Penal Code unless otherwise specified.

# I.

## BACKGROUND

On June 18, 2020, Escobedo-Yagut pulled the truck he was driving to the right shoulder of the road. As a motorcycle tried to pass him on the left, he made a U-turn across double-yellow lines and collided with the motorcycle. He then sped off. The driver of the motorcycle and his passenger, J.M., both suffered injuries.

Escobedo-Yagut was charged with one count of leaving the scene of an accident in violation of Vehicle Code section 20001, subdivision (a). He was also charged with three other counts, at least two of which were for a separate incident: count 2 was for leaving the scene of an accident that occurred on or about May 23, 2020, in violation of Vehicle Code section 20001, subdivision (a); count 3 was for driving under the influence of alcohol on or about May 23, 2020, in violation of Vehicle Code sections 23152, subdivision (a) and 23540; and count 4 was for driving under the influence of alcohol on or about June 18, 2020, in violation of Vehicle Code sections 23152, subdivision (a) and 23540.

On October 5, 2020, Escobedo-Yagut pled no contest to counts 1 and 4. The trial court dismissed the other counts, suspended imposition of sentence, and placed Escobedo-Yagut on probation for five years. The parties reserved the issue of victim restitution as a condition of probation.

Several months later, the trial court held a bifurcated hearing to determine whether victim restitution for J.M. was available under section 1202.4, which provides for direct victim restitution for losses caused by defendant's crime (§ 1202.4, subd. (a)(1)), or section 1203.1, authorizing restitution as a condition of probation (§ 1203.1, subd. (a)(3)). The court first found that under *People v. Martinez* (2017) 2 Cal.5th 1093 (*Martinez*), direct

2

victim restitution was not available since J.M.'s losses were caused by the underlying car accident and not Escobedo-Yagut's offense of leaving the scene of the accident. The court concluded, however, that victim restitution was available under section 1203.1 as a condition of Escobedo-Yagut's probation.

The trial court held a hearing a few months later to determine the appropriate amount of victim restitution. At the hearing, J.M. testified as to the injuries and losses she sustained in the car accident. She said she broke two bones in her back, five ribs, her ankle, and her pubic bone and pelvis, and she also suffered a concussion and low oxygen levels. She spent four days in the intensive care unit and another 10 days in the hospital. After that, an occupational therapist from Kaiser visited her at her home.

At the time of the restitution hearing, which occurred more than a year after the car accident, J.M. was still receiving treatment for her injuries and experiencing debilitating pain. She had been seeing a physical therapist for several months and a chiropractor every week. She also still experienced pain in her lower back, pubic area, and her foot, which often prevented her from doing everyday tasks like grocery shopping. She hired an assistant to help with those tasks, as well as a housecleaner and a caregiver for her daughter. The pain from her injuries also kept her from working her job as a hairdresser more than half a day per week compared to the five days per week she worked prior to the car accident.

J.M. testified that Kaiser paid for her hospital bills but not for the at-home care or the chiropractor and for only some of her physical therapy. She sought restitution for, among other things, loss of work wages, child care, and at-home care.

After taking the matter under submission, the trial court assessed victim restitution for J.M. in the amount of $323,160.19, as a condition of

Escobedo-Yagut's probation, finding that it was "consistent with the actual losses incurred by the victim" and that it would "deter future criminality to understand the financial consequences associated with criminality." The restitution award included $177,458.23 for medical expenses from Kaiser, $108,720 for lost income, and $36,981.96 for other expenses.

## II.

## DISCUSSION

### A.      *Validity of the Restitution Award Under* People v. Lent

Section 1203.1 provides the basis for the restitution as a condition of Escobedo-Yagut's probation. That section requires the court, when granting probation, to provide for restitution in "proper cases." (§ 1203.1, subd. (a)(3).) The court must consider whether the defendant is to make restitution to the victim or to the state's restitution fund. (*Id.*, subd. (b).) In this case, the trial court ordered Escobedo-Yagut to pay restitution as a condition of his probation to the victim, J.M., for her losses from the car accident. Escobedo-Yagut contends that order serves no legitimate purpose under section 1203.1.

Section 1203.1 gives trial courts broad discretion to impose conditions of probation to promote rehabilitation of the defendant, to protect the public and the victim, and to ensure that justice is done. (§ 1203.1, subd. (j); *Brown v. Superior Court* (2002) 101 Cal.App.4th 313, 319.) A condition of probation will not be held invalid unless it (1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality. (*People v. Lent* (1975) 15 Cal.3d 481, 486 (*Lent*).) "Conversely, a condition of probation which requires or forbids conduct which is not itself criminal is valid if that conduct is reasonably related to the crime of which the defendant was convicted or to future criminality." (*Ibid.*) We review an

4

award of restitution to determine whether it is "arbitrary or capricious or otherwise exceeds the bounds of reason under the circumstances." (*People v. Anderson* (2010) 50 Cal.4th 19, 32.)

Escobedo-Yagut argues that all or part of the restitution award is invalid under *Lent* for two reasons: (1) there were no financial consequences associated with his crime of leaving the scene of the accident; and (2) requiring him to pay J.M. for benefits paid by Kaiser does not reimburse her for her actual losses or serve to deter his future criminality. We disagree on both counts.

Escobedo-Yagut first contends the restitution condition is improper because it compensates J.M. for losses from the car accident rather than for losses from the crimes he pled to. This argument is contrary to law.

Victim restitution as a condition of probation is not limited to the direct consequences of the criminal acts of which a defendant is convicted. (*People v. Miller* (1967) 256 Cal.App.2d 348, 355–356 (*Miller*).) In *Miller*, the defendant was convicted of fraud in connection with his business but ordered to pay restitution, in part, based on breach of contract claims that also arose out of the operation of his business. (*Ibid*.) A court may also consider crimes which were charged but dismissed, uncharged crimes, and charges of which the defendant was acquitted, "if justice requires they be considered." (*People v. Goulart* (1990) 224 Cal.App.3d 71, 79.) This is because the granting of probation is not a right but a privilege, and the defendant is free to refuse probation. (*Miller*, at p. 356.) The trial court may therefore impose probation conditions it otherwise would not be able to, so long as they are not invalid under the three *Lent* criteria. (*Lent*, *supra*, 15 Cal.3d at p. 486.)

Our high court addressed restitution as a condition of probation in the context of a hit and run in *People v. Carbajal* (1995) 10 Cal.4th 1114

5

(*Carbajal*).  The defendant in that case pled no contest to leaving the scene of an accident in violation of Vehicle Code section 20002, subdivision (a), after he drove his car into an unoccupied vehicle and left the scene of the accident without leaving his name and information.  (*Carbajal*, at p. 1119.)  The court concluded that a probation condition requiring the defendant to pay restitution to the owner of the damaged vehicle did not violate *Lent* because it was " 'reasonably related' " to both the crime of which the defendant was convicted and the goal of deterring future criminality.  (*Carbajal*, at p. 1123.)  First, the court found that the restitution was related to the crime of leaving the scene of the accident because the crime "imposes on the nonfleeing driver the additional costs of locating the fleeing driver and, in some cases, the total costs of the accident."  (*Id*. at p. 1124.)  Second, the restitution acted "both as a deterrent to future attempts to evade . . . legal and financial duties as a motorist and as a rehabilitative measure tailored to correct the behavior leading to his conviction."  (*Ibid*.)  The defendant admitted his negligent driving caused the damage to the victim's car, so there was "no question as to defendant's responsibility for the loss."  (*Ibid*.)  Under those circumstances, the restitution "would serve the rehabilitative purposes specified in section 1203.1."  (*Id*. at p. 1125.)

Escobedo-Yagut does not contend that the restitution condition in this case is not " 'reasonably related' " to his crime or to the goal of deterring future criminality.  His argument is simply that there is no direct causal link between his crime and the restitution condition.  That argument has no legal basis under section 1203.1. (See *Miller, supra*, 256 Cal.App.2d at pp. 355–356.)  He conflates restitution as a condition of probation under section 1203.1, with direct victim restitution under section 1202.4, which does require a direct causal link between the restitution order and the

6

defendant's crime. (*Martinez, supra,* 2 Cal.5th at pp. 1097–1098.) But section 1203.1 is broader than section 1202.4 and does not contain language found in section 1202.4 limiting restitution to losses that resulted from the crime itself. (*Martinez,* at pp. 1097–1098.) For that reason alone, Escobedo-Yagut has not met his burden in demonstrating the trial court abused its discretion by imposing a restitution condition based on losses caused by the car accident rather than by his crime. (See *Lee v. Kim* (2019) 41 Cal.App.5th 705, 721.)

Moreover, we see no reason to depart from the reasoning in *Carbajal* in this case. The trial court, in ordering restitution for J.M.'s losses, did not address whether Escobedo-Yagut's crime was related to the restitution, but it did find that the restitution condition would deter future criminality by causing Escobedo-Yagut to "understand the financial consequences associated with criminality." Such a finding is consistent with *Carbajal* based on the record before us. Escobedo-Yagut pled no contest to leaving the scene of an accident that caused injury to J.M. He appears to have conceded in the trial court below that he caused the accident when he made a sudden unlawful U-turn, facts he does not now dispute.[3] The restitution order

_____

[3] The People cite the parties' trial court briefs regarding the issue of victim restitution in support of its contention that Escobedo-Yagut is at fault for the accident. Based on the limited record before us, Escobedo-Yagut invited the trial court to consider the facts regarding the cause of the car accident by citing them in his brief and failing to dispute them. "The doctrine of invited error prevents a party from asserting an alleged error as grounds for reversal when the party through its own conduct induced the commission of the error." (*County of Los Angeles v. Southern Cal. Edison Co.* (2003) 112 Cal.App.4th 1108, 1118.) Moreover, Escobedo-Yagut admits in his opening brief that the collision occurred when he made a U-turn from the right shoulder of the road across double-yellow lines as the motorcycle attempted to pass him on the left. He cites to the same trial court briefs in

7

encompasses losses J.M. sustained as a result of the car accident. The restitution condition therefore serves rehabilitative and deterrent purposes because it forces Escobedo-Yagut to "accept the responsibility he attempted to evade by leaving the scene of the accident without identifying himself." (*Carbajal, supra*, 10 Cal.4th at p. 1124.)

We conclude it was not an abuse of discretion for the trial court to impose restitution as a condition of Escobedo-Yagut's probation for J.M.'s losses from the car accident.

Escobedo-Yagut next argues the trial court erred by requiring him to pay J.M. $177,458.23 for benefits paid by Kaiser, J.M.'s insurer. Specifically, he contends this component of the restitution condition does not deter his future criminality or reimburse J.M. for her actual losses. But he has not shown error.

We must presume the trial court's order is correct, and the appellant bears the burden of affirmatively demonstrating error. (*Howard v. Thrifty Drug & Discount Stores* (1995) 10 Cal.4th 424, 443.) To demonstrate error, the appellant must provide a cogent argument supported by legal authority and citations to the record. (*Champir, LLC v. Fairbanks Ranch Assn.* (2021) 66 Cal.App.5th 583, 597.) Escobedo-Yagut has not done so here. He fails to cite to any legal authority in support of his argument regarding the benefits paid by Kaiser. And he does not support his assertion that the $177,458.23 included in the restitution order is the amount Kaiser charged itself for J.M.'s medical expenses. He cites to the restitution order, but the order shows only that $177,458.23 of the restitution amount is associated with "Kaiser-

---

support of those facts. We may use the factual assertions in a party's appellate brief as admissions. (*Davenport v. Blue Cross of California* (1997) 52 Cal.App.4th 435, 444, fn. 4.)

8

Consolidated Statement of Benefits." A statement of benefits, without more, does not necessarily reflect only those expenses covered by the insurer. By failing to support his argument with legal authority and citation to the record, Escobedo-Yagut has forfeited this argument. (*Champir, LLC v. Fairbanks Ranch Assn.*, at p. 597.)

Even assuming he has not forfeited this argument, including amounts paid by Kaiser for J.M.'s injuries was proper because it serves the deterrent and rehabilitative purposes of section 1203.1. Our research has not revealed, and the parties have not provided, any section 1203.1 cases involving a challenge to a restitution condition that included amounts for which the victim was reimbursed by the victim's insurer.[4] Nonetheless, a defendant obligated to pay direct victim restitution under section 1202.4 is generally not entitled to offset amounts paid by third parties because the inclusion of those amounts in the restitution order serves, in part, deterrent and rehabilitative goals. (*People v. Hove, supra*, 76 Cal.App.4th at p. 1273 (*Hove*).) That reasoning applies here.

In *Hove*, the Court of Appeal upheld an order requiring the defendant to make restitution to the victim for the full amount of the economic loss caused by the defendant's criminal conduct, even though the victim's medical expenses were paid by Medicare and Medi-Cal. (*Hove, supra*, 76 Cal.App.4th

---

[4] The People cite to *People v. Duong* (2010) 180 Cal.App.4th 1533, where the victim restitution order appears to have been a condition of the defendant's probation. (*Id.* at p. 1535.) However, the Court of Appeal analyzed the propriety of the restitution condition under section 1202.4 and its corresponding case law and does not mention section 1203.1. (*Duong*, at pp. 1536–1540.) Relying in part on *People v. Hove* (1999) 76 Cal.App.4th 1266, which we discuss below, the court concluded that the trial court erred in failing to include any amount to cover the cost of medical services that the victim received at Kaiser Hospital. (*Id.* at pp. 1538–1539.)

at pp. 1269–1276.) The court explained that the fortuity that the victim was covered by Medicare should not shield the defendant from a restitution order which requires him to pay the full amount of the losses caused by his crime or help him evade responsibility for the losses he caused. (*Id.* at p. 1272.) The restitution order was therefore appropriate even though the victim could potentially profit from the restitution if Medi-Cal did not seek reimbursement. (*Id.* at pp. 1272–1273.) The court further asserted, "In addition to compensating the victim, the restitution order [was] proper because of the value of such an order as a means of rehabilitating [the] defendant and deterring [the] defendant and others." (*Id.* at p. 1273.)

The court in *People v. Hume* (2011) 196 Cal.App.4th 990 (*Hume*) rejected the defendant's argument that the primary purpose of restitution is to make the victim whole, and that he was therefore entitled to an offset for amounts received by his victims as reimbursement from a third party fund. (*Id.* at p. 1000.) To the contrary, the court found that "above and beyond victim compensation, restitution serves rehabilitative and deterrent purposes." (*Ibid.*) Citing *Hove*, the court upheld the trial court's order requiring the defendant to pay victim restitution under section 1202.4, concluding the trial court can order a defendant to pay the full amount of the victim's economic loss, notwithstanding any reimbursements the victim received from their insurer. (*Hume*, at p. 1000.)

Though *Hove* and *Hume* involve direct victim restitution under section 1204.1, section 1203.1 serves the same goals as that section to rehabilitate and deter defendants (§ 1203.1, subd. (j); *Lent*, *supra*, 15 Cal.3d at p. 486), and the trial court's discretion under section 1203.1 to achieve those goals is broader than it is under section 1202.4. (*People v. Anderson*, *supra*, 50 Cal.4th at p. 29.) As mentioned, restitution under section 1202.4 is

10

limited to the direct victim's losses that resulted from the defendant's crime. (§ 1202.4, subd. (a)(1).) But "[w]hen section 1203.1 provides the court with discretion to achieve a defendant's reformation, its ambit is necessarily broader, allowing a sentencing court the flexibility to encourage a defendant's reformation as the circumstances of his or her case require." (*People v. Anderson,* at p. 29.)

The restitution condition here accords with those statutory goals. As discussed, a restitution condition that requires Escobedo-Yagut to pay for J.M.'s losses from the car accident is related to the goal of deterring his future criminality. Kaiser covered at least some of J.M.'s medical expenses from the car accident as her insurer (though it is not clear whether those specific expenses were included in the restitution order). There is no evidence that Escobedo-Yagut reimbursed Kaiser for the amounts it paid on J.M.'s behalf. Including those amounts in the restitution order therefore serves to rehabilitate and deter Escobedo-Yagut because it places the full amount of the loss associated with his crime on him. (*Hove, supra,* 76 Cal.App.4th at p. 1272.)

Escobedo-Yagut contends the $177,458.23 "does more than compensate" J.M. for her actual losses. But like *Hove* and *Hume,* the fortuity that J.M. was covered by her own insurance should not shield Escobedo-Yagut from a restitution order. (*Hove, supra,* 76 Cal.App.4th at p. 1272; *Hume, supra,* 196 Cal.App.4th at p. 1000.) Moreover, similar to *Hove* and *Hume,* J.M.'s payments may be subject to a reimbursement claim by Kaiser. (*Hove,* at p. 1272, fn. 5; *Hume,* at p. 999.) We note that Escobedo-Yagut has not argued that Kaiser does not have reimbursement rights in this case. His argument concerns only the restitution condition's value as a means to deter him and compensate J.M.

We therefore make all presumptions in favor of the order's correctness (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564), and conclude the trial court did not abuse its discretion by including in the restitution order amounts that may have been paid by Kaiser for J.M.'s medical expenses.

**B.    *Eighth Amendment***

Escobedo-Yagut next argues that the restitution order violates the prohibition in the state and federal Constitutions against excessive fines. Again, we disagree.

The prohibition in the Eighth Amendment to the United States Constitution against excessive fines applies to " 'payment[s] to a sovereign as punishment for some offense.' " (*United States v. Bajakajian* (1998) 524 U.S. 321, 327.) A fine is excessive under the Eighth Amendment "if it is grossly disproportionate to the gravity of a defendant's offense." (*Bajakajian*, at p. 334.) The California Constitution contains a similar prohibition. (Cal. Const., art. I, § 17.) In determining whether a fine is excessive, courts consider the defendant's culpability, the relationship between the harm and the penalty, the penalties imposed in similar statutes, and the defendant's ability to pay. (*People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2005) 37 Cal.4th 707, 728.)

The Eighth Amendment and its counterpart under the California Constitution do not apply to the restitution order here. Escobedo-Yagut must pay restitution directly to the victim, not to the state, and victim restitution does not constitute punishment. (§ 1203.1, subd. (b); *People v. Harvest* (2000) 84 Cal.App.4th 641, 649–650.) "While a victim restitution order may also serve the purposes of rehabilitation and deterrence [citations], its measure is the harm suffered by crime victims and its primary effect is to compensate those victims." (*People v. Evans* (2019) 39 Cal.App.5th 771, 777.) Escobedo-

12

Yagut cites to an Iowa state court case as support for his contention that the Eighth Amendment applies to the restitution condition. That decision is not binding on us, and it concerns a statutory scheme distinct from California's victim restitution statutes. (*Acco Contractors, Inc. v. McNamara & Peepe Lumber Co.* (1976) 63 Cal.App.3d 292, 296; *State v. Izzolena* (Iowa 2000) 609 N.W.2d 541, 548; § 1203.1.) Moreover, the Iowa state court found that the restitution award and the statute upon which it was based contained several "punitive" features missing in this case, including a statutory minimum threshold amount of $150,000 for all cases. (*State v. Izzolena*, at pp. 548–549.)

Even if the constitutional prohibition against excessive fines applies here, the restitution order is not excessive given the severity of J.M.'s injuries and the relationship between Escobedo-Yagut's conduct and J.M.'s losses. As discussed, Escobedo-Yagut conceded that his unlawful driving caused the car accident that injured J.M., and he pled no contest to fleeing the scene of the accident. As a result of the car accident, J.M. broke several bones in her body, was in the hospital for two weeks, required ongoing healthcare, and suffered debilitating pain almost a year later that diminished her capacity to work and perform everyday tasks and that forced her to hire help. The restitution order encompasses those losses. It therefore does not constitute an excessive fine under the state and federal Constitutions since it is proportionate to the losses J.M. incurred due to Escobedo-Yagut's unlawful conduct. (See *People v. Allen* (2019) 41 Cal.App.5th 312, 326, fn. 7.)

Escobedo-Yagut also contends the restitution order is excessive given his financial situation. But the ability to pay is but one factor in the proportionality analysis, and the Eighth Amendment does not require a determination of ability to pay before the imposition of any fine. (*People v.*

13

*Pack-Ramirez* (2020) 56 Cal.App.5th 851, 861.) We cannot conclude on the record before us that the restitution award is grossly disproportionate to the gravity of Escobedo-Yagut's offense. (See *U.S. v. Dubose* (9th Cir. 1998) 146 F.3d 1141, 1145.) In addition, he points out that he is required to pay over $324,000 in restitution to avoid serving only 219 days in jail. Yet Escobedo-Yagut accepted probation on the condition that he may have to pay victim restitution. As discussed, the restitution condition is proportional to the harm associated with his unlawful conduct.

We conclude the restitution order does not violate the federal and state constitutional prohibition against excessive fines.

## III.

## DISPOSITION

The order awarding J.M. restitution as a condition of Escobedo-Yagut's probation is affirmed.

EAST, J.*


WE CONCUR:


HUMES, P. J.


MARGULIES, J.


A163707
*People v. Escobedo-Yagut*

---

* Judge of the San Francisco Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

15