Filed 11/2/22  P. v. Mitchell CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>DAVID E. MITCHELL,<br><br>        Defendant and Appellant. | A162945<br><br>(San Mateo County<br>Super. Ct. No. 16SF012951A) |

In 2019, appellant David E. Mitchell pleaded no contest to voluntary manslaughter for the 2011 stabbing death of 71-year-old Klaus Gachter, from whom appellant had stood to inherit $700,000.  Following a contested restitution hearing, the trial court ordered appellant to pay $189,500 in victim restitution to Gachter's estate for loans he had secured against his expected inheritance—and which the estate repaid to the lending companies—in the years following Gachter's death but before appellant was convicted and disqualified from his inheritance.  Appellant appeals from the restitution order, arguing that the loan repayments were not compensable losses under the restitution statute.  We disagree and affirm.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

On December 16, 2011, Foster City police officers responded to Gachter's residence.[1]  When the officers arrived, they found Gachter on his kitchen floor covered in blood with broken glass around his head.  Gachter had sustained multiple lacerations on his head and chest.  A steak knife covered in blood, matching the other knives in his kitchen, was located next to his feet.  He was pronounced dead at the scene.  An autopsy later revealed that Gachter had suffered multiple stab wounds to his chest, face, and neck.  He also sustained a scalp laceration and rib fracture, along with displaying defensive wounds on his hands.  A single key was located in the deadbolt of the door leading from the backyard into the kitchen, and there were no signs of forced entry into the residence.

Police officers investigated Gachter's death for several years and eventually learned that appellant—Gachter's godson—stood to inherit 10 percent of Gachter's estate, which was valued at $7 million.  The police also discovered that following Gachter's death, appellant had secured loans against his expected inheritance from two probate lending companies.  In November 2016, appellant and his cousin Willie Venable were arrested for Gachter's murder.

On December 23, 2019, the San Mateo County District Attorney filed an amended information charging appellant and Venable with murder for financial gain (Pen. Code, §§ 187, subd. (a), 190.2, subd. (a)(1); count 1)[2] and voluntary manslaughter (§ 192, subd. (a); count 2).  That same day, pursuant to a negotiated plea agreement, appellant pleaded no contest to voluntary

---

[1] The facts of the crime are taken from the probation officer's report.
[2] All undesignated statutory references are to the Penal Code.

manslaughter. The trial court dismissed the remaining count and the financial gain special-circumstance allegation. As part of his plea agreement, appellant agreed to pay "actual restitution."

On February 6, 2020, in accordance with the terms of the plea agreement, the trial court sentenced appellant to 11 years in prison.[3]

In April 2021, the prosecution filed a motion for court-ordered restitution, requesting reimbursement to Gachter's estate for amounts paid to the probate lending companies that had advanced funds to appellant, as well as reimbursement for attorney's fees expended by the estate to disqualify appellant from his inheritance.[4]

On June 21, 2021, the trial court ordered appellant to pay Gachter's estate a total of $216,470 in victim restitution—$189,500 of which was owed joint and severally with Venable.[5] This appeal followed.

## II.

## DISCUSSION

### A.     Appellant's Contentions

Appellant contends that the trial court abused its discretion in awarding reimbursement to Gachter's estate for the payments the estate made to the probate lending companies, observing that the lenders "were clearly not 'direct victims' within the meaning of section 1202.4." He further

---

[3] Appellant's codefendant Venable pleaded no contest to voluntary manslaughter and received a stipulated 11-year prison sentence.

[4] One who "feloniously and intentionally kills" the decedent is not entitled to any property, interest, or benefit under a will of the decedent. (Prob. Code, § 250, subd. (a); see Civ. Code, §§ 2224, 3517 ["No one can take advantage of his own wrong"].) All such property interests or benefits pass as if the killer had predeceased the decedent. (Prob. Code, § 250, subd. (b).)

[5] Gachter's estate requested that the restitution be paid to the nonprofit, The Nepal Youth Foundation.

asserts that "because the lenders were not entitled to repayment of the advances from the estate, those distributions made by the estate do not constitute a compensable economic loss for purposes of criminal restitution."

We review a trial court's restitution order for abuse of discretion, which will be found only when there is an absence of a factual and rational basis for it. (*People v. Giordano* (2007) 42 Cal.4th 644, 663-664; *People v. Jessee* (2013) 222 Cal.App.4th 501, 507 (*Jessee*); *People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1542 (*Gemelli*).) "[A]n order resting on a demonstrable legal error constitutes such an abuse." (*People v. Hume* (2011) 196 Cal.App.4th 990, 995; *People v. Woods* (2008) 161 Cal.App.4th 1045, 1049.)

## B.    The Claim Is Not Forfeited

The Attorney General initially asserts that appellant forfeited his claim on appeal regarding restitution because at sentencing he failed to object to the restitution order on the grounds that he now asserts. Appellant concedes that he raised no specific objection or challenge "to the [trial court's] imposition of restitution with regards to the inheritance advances" during the restitution hearing.[6] However, he argues that his claim falls within the "unauthorized sentence" exception to forfeiture. We agree with appellant that the exception applies and his claim is preserved.

"[T]he 'unauthorized sentence' concept constitutes a narrow exception to the general requirement that only those claims properly raised and preserved by the parties are reviewable on appeal. [Citations.]" (*People v.*

---

[6] At the restitution hearing, trial counsel made the following arguments: (1) that appellant was not the actual killer; (2) that there was no waiver under *People v. Harvey* (1979) 25 Cal.3d 754 for the trial court to consider the dismissed murder for financial gain charges; (3) that Gachter's estate had previously indicated it was not seeking restitution; (4) that the estate was not a "direct victim" entitled to restitution; and (5) that attorney's fees were not recoverable.

*Scott* (1994) 9 Cal.4th 331, 354 (*Scott*).) An unauthorized sentence is one that "could not lawfully be imposed under any circumstance in the particular case." (*Ibid*.) In such contexts, failure to object at trial does not forfeit the claim on appeal. This is because "[a]ppellate courts are willing to intervene in the first instance because such error is 'clear and correctable' independent of any factual issues presented by the record at sentencing." (*Ibid.,* quoting *People v. Welch* (1993) 5 Cal.4th 228, 236 (*Welch*).)

Appellant's claim that the trial court exceeded its statutory authority because the "loss" incurred is not a compensable loss under section 1202.4 falls within the "unauthorized sentence" exception. The claim presents a legal question that is "clear and correctable" by an appellate court without reviewing factual circumstances. (*Welch, supra,* 5 Cal.4th at pp. 235–236.) Such a claim does not implicate the trial court's sentencing discretion, but rather whether the restitution order "could . . . lawfully be imposed under any circumstance in the particular case." (*Scott, supra,* 9 Cal.4th at p. 354.) Consequently, appellant did not forfeit his claim.

## C.    **Additional Background**

Prior to Gachter's death in 2011, appellant stood to inherit 10 percent of Gachter's $7 million estate. Following Gachter's death, but before appellant was arrested in 2016 and charged with murder, two probate lending companies loaned him a total of $189,000 against his expected inheritance. (See, *e.g., Estate of Molino* (2008) 165 Cal.App.4th 913, 921 [" 'A beneficiary may assign or otherwise transfer his or her interest in an estate prior to distribution.' "]; see also Prob. Code, §§ 11604, 11604.5.) Specifically, in 2012 appellant assigned the company Advance Inheritance (AI) $56,000 of his expected inheritance in exchange for a $35,000 cash advance. Additionally, between 2013 and 2014 he assigned Inheritance Funding

5

Company (IFC) $133,000 of his expected inheritance in exchange for a total of $80,000 in cash advances. The assignments were filed with the probate division for the Superior Court of San Mateo County.

In May 2017, following appellant's arrest in 2016 and the filing of criminal charges against him, AI and IFC applied to the probate court for preliminary distributions from Gachter's estate, arguing that they were "innocent purchasers" under Probate Code section 255.[7]

In June 2017, the probate court issued a written order regarding the "Status of Administration and Petition for Preliminary Distribution." The court found that AI and IFC met the requirements under Probate Code section 255, and authorized the administrator of Gachter's estate to make preliminary distributions to AI ($56,000) and IFC ($133,500).[8] (See Prob. Code, § 11623.) The court also authorized the administrator to make preliminary distributions totaling $1,682,500 to numerous will beneficiaries, including appellant ($170,500) and the nonprofit, The Nepal Youth Foundation ($200,000). The court required the administrator "to withhold the preliminary distribution to [appellant] … and to deposit said amount in a segregated, interest-bearing account until further order of the Court."

Following appellant's no contest plea to voluntary manslaughter for Gachter's death, the probate court held that appellant was "disqualified from

---

[7] The statutes that disinherit heirs who kill their benefactors do not affect the rights of good-faith purchasers (ones who purchase from the killer, for value and without notice, the property the killer would have acquired lawfully except for the homicide statutes), and the killer remains liable for the amount of the proceeds or the value of the property. (Prob. Code, § 255.)

[8] Appellant questions why the probate court awarded IFC an additional $500 over the loan amount. However, IFC's petition prayed for costs, fees or other relief as the court deemed appropriate. The court could thus have awarded IFC the additional $500 for costs.

inheriting under [Gachter's] will" because he had "intentionally participated in a plan" with Venable that resulted in Gachter's death.  Gachter's estate incurred $26,970 in legal fees during the disinheritance proceedings.[9]

**D.     Applicable Legal Principles**

California's Constitution entitles crime victims to restitution.  (Cal. Const., art. I, § 28, subd. (b)(13); *People v. Lockwood* (2013) 214 Cal.App.4th 91, 95.)  This constitutional mandate is codified in section 1202.4, subdivision (f), which states that "in every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court."  (See *People v. Runyan* (2012) 54 Cal.4th 849, 856 (*Runyan*).)  A victim's restitution right is to be broadly and liberally construed.  (*People v. Weatherton* (2015) 238 Cal.App.4th 676, 684; *People v. Cowart* (2015) 238 Cal.App.4th 945, 954.)

Article I, section 28, subdivision (b)(13) of the California Constitution specifies that a "victim" is a person who suffers direct or threatened physical, psychological, or financial harm as a result of a crime, and additionally defines a victim to include, inter alia, a lawful representative of a crime victim who is deceased.  (See *Runyan, supra,* 54 Cal.4th at p. 860.)  Subdivision (k) of section 1202.4 defines crime victims for purposes of restitution under that statute.  In pertinent part, it states: "For purposes of this section, 'victim' shall include all of the following: [¶]  …  [¶]  A corporation, business trust, *estate,* trust, partnership, association, joint

_____

[9] The trial court's restitution award includes $26,970 to reimburse the estate for attorney's fees expended during the disinheritance proceedings. Appellant does not challenge the restitution award as to these attorney's fees.

venture, government, governmental subdivision, agency, or instrumentality, or any other legal or commercial entity when that entity is a direct victim of a crime." (§ 1202.4, subd. (k)(2), italics added.)

A restitution award must be based on the amount of loss claimed by the victim, or any other showing made to the trial court. (§ 1202.4, subd. (f).) When determining the amount of loss, the court applies the preponderance of the evidence standard and may use any rational method reasonably calculated to make the victim whole. (*People v. Nichols* (2017) 8 Cal.App.5th 330, 342; *Jessee, supra,* 222 Cal.App.4th at pp. 506-507; *Gemelli, supra,* 161 Cal.App.4th at p. 1542.)

### E. Analysis

Appellant contends that the probate lenders were "clearly not 'direct victims' within the meaning of section 1202.4." The contention is of no moment, as restitution was granted to Gachter's estate, not to the lenders. We also observe that appellant concedes "there is no doubt the decedent's estate is a ' "direct victim." ' " (See *Jessee, supra,* 222 Cal.App.4th at p. 509 [life insurance and other assets owned by murder victim became part of his estate as a result of his death; "in this sense, [the victim's] estate itself is an entity against which those crimes were committed," and the estate was entitled to restitution on its own behalf.].)

Appellant next asserts that the probate lenders were not entitled to reimbursement for the advances on his inheritance, and, on that basis, argues that the distributions made by Gachter's estate to the lenders do not constitute compensable economic losses for purposes of criminal restitution. In so arguing, he contends that the lending companies did not have any right to payment from the estate at the time the preliminary distributions were made because the lending companies' rights were contingent on his own right

to inherit, which was extinguished by his crime. He further emphasizes that although the probate court authorized the estate to make the distributions, the estate was not ordered or mandated to do so.

Specifically, appellant suggests that "[b]y agreeing to a nonrecourse assignment of appellant's right to inherit, rather than structuring the agreement as a tradition[al] consumer loan, the lending companies specifically assumed the risk that they would not recover if appellant's inheritance was insufficient to cover the amounts advanced or if appellant's right to inherit was voided entirely." He notes that when the disbursements were authorized in June 2017, he had yet to be convicted, arguing that "[a]t best, the lending companies, at that point, only had a *potential* right to recover, rather than any actual right to disbursement." On that basis, he asserts that "[t]o the extent the estate actually made payments to the lending companies, those payments were erroneous." He also contends that even if the lending companies were "innocent purchasers" under Probate Code section 255, "the estate was under no obligation to make the authorized disbursements and cannot now claim these disbursements were 'economic losses' encompassed by section 1202.4."

As is apparent, the thrust of appellant's challenge is to the propriety of the probate court's June 2017 preliminary disbursement order. However, the time to challenge that order has long since passed. Appellant, who was still a named heir when the order was issued, had standing to challenge the order if he believed it was legally unsound. (See Prob. Code §§ 48, subd. (a)(1), 1303, subd. (g).) He did not raise any such challenge, and it is too late to do so here.

Because of the nature of probate proceedings, final orders during the course of the administration are given preclusive effect as to any later orders.

9

"Each separate proceeding in the probate of an estate culminating in a decree authorized by the Legislature and thus within probate jurisdiction, results in a judgment and, when it becomes final, that judgment is binding on all interested parties, as to the matters that it determines." (*Stevens v. Torregano* (1961) 192 Cal.App.2d 105, 115-116; see generally *Estate of Radovich* (1957) 48 Cal.2d 116, 120-121.) Additionally, it is well established that "if an order is appealable, appeal must be taken or the right to appellate review is forfeited." (*In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 761, fn. 8.) Code of Civil Procedure section 904.1, subdivision (a)(10) provides that an appeal may be taken from any order made appealable by the Probate Code. Probate Code section 1303, subdivision (g) provides that an appeal may be taken from an order "[d]irecting distribution of property." Because the probate court's June 2017 order was an order for a preliminary distribution, it was an appealable order. Appellant did not appeal from the order, which is now final. Thus, the legal sufficiency of the probate court's decision to authorize reimbursement to the probate lending companies is not before us.

Appellant next argues that the economic loss suffered by Gachter's estate was not subject to restitution under section 1202.4 because the loss was not a reasonably foreseeable consequence of his criminal conduct. He maintains that his commission of voluntary manslaughter was not the proximate cause of the estate's loss. Instead, he faults the estate itself for making the payments, arguing that IFC and AI "had no greater right to those monies than appellant and he should [not] be required to pay restitution as a result of the estate's error." The Attorney General counters that section 1202.4 requires only that a victim's losses occur "as a result of the commission of a crime." (§ 1202.4, subd. (a)(1).)

Tort principles of causation apply to restitution claims in criminal cases. (*People v. Jones* (2010) 187 Cal.App.4th 418, 424-427.) There are two aspects of causation: cause in fact (also called direct or actual causation), and proximate cause. (*Id.* at p. 424.) An act is a cause in fact if it is a necessary antecedent of an event. California courts have adopted the "substantial factor" test in analyzing proximate cause. (*People v. Holmberg* (2011) 195 Cal.App.4th 1310, 1321-1322.) The substantial factor standard is relatively broad; the contribution of the individual cause must be more than negligible or theoretical. (*Ibid.*) A force that plays only an infinitesimal or theoretical part in bringing about the loss is not a substantial factor. A very minor force that does cause harm, however, is a substantial factor. (*Ibid.*)

" 'The substantial factor standard … subsumes the "but for" test while reaching beyond it to satisfactorily address other situations, such as those involving independent or concurrent causes in fact. [Citations.]' [Citation.]" (*People v. Foalima* (2015) 239 Cal.App.4th 1376, 1396.) Thus, so long as the defendant's conduct was a substantial factor in causing the economic loss incurred by the victim or victims, it need not have been the sole cause of that loss.

As noted above, appellant has forfeited any legal challenge to the legitimacy of the distributions. The disbursements were authorized by the probate court's June 2017 order, and it is undisputed that the estate acted in accordance with that order. Regardless, appellant's causation argument is unconvincing, as the estate would not have been under any obligation to reimburse the lenders in the first place but for appellant's decision to kill his godfather and seek advances on an inheritance to which he was not entitled. His actions were thus a substantial factor in causing the estate's loss. Accordingly, we conclude that the economic loss suffered by the estate is the

11

proper subject of the restitution order because the loss occurred "as a result of the defendant's conduct." (§ 1202.4, subd (f).)

Next, appellant asserts that ordering restitution to Gachter's estate for a "non-existent obligation" would result in a "windfall" to the estate, theorizing that the estate "was not required or even ordered to make the preliminary disbursements to the lending companies." We are not persuaded.

The estate is not receiving a "windfall." Rather, the estate is being made whole for the amounts it validly expended in reimbursing the probate lending companies for the money appellant borrowed against his expected inheritance. Moreover, in reimbursing these lenders, the estate administrator was acting under a court order. That order recognized the estate's obligation to the lenders as legitimate and viable, not "non-existent." Whether the estate may have had the discretion to refuse to comply with the order is of no consequence. Section 1202.4 does not require crime victims to establish that their economic losses were unavoidable in order to qualify for restitution. (See *People v. Moore* (2009) 177 Cal.App.4th 1229, 1232 ["loss" is interpreted broadly, and the *only* limit on victim restitution " 'is that the loss must be an "economic loss incurred as a result of the defendant's criminal conduct." [Citations.]]' ".) Further, if we were to agree with appellant's position, then we would be countenancing a "windfall" to him, essentially allowing him to retain the benefit of the advances on an inheritance that he was legally ineligible to receive due to his criminal actions, to the detriment of Gachter's estate.[10]

---

[10] Appellant also asserts, without citation to any legal authority, that "because the lending companies were improperly paid, the estate still retains the right to seek a refund of those amounts." At the same time, he contends that he "would have no such recourse against the estate for an improper restitution award." The disbursements from Gachter's estate were made in

## DISPOSITION

The restitution order is affirmed.

---

2017, and the statutes of limitations on any action in which the estate could seek a refund have long since expired.  We also perceive no unfairness to appellant because, as explained above, he had the opportunity to challenge the distributions, but failed to do so.

DEVINE, J.*

WE CONCUR:


HUMES, P. J.


MARGULIES, J.


A162945N

---

* Judge of the Contra Costa County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

14