Filed 10/12/22  P. v. Woolery CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>  v.<br><br>JACOB DAVID WOOLERY,<br><br>    Defendant and Appellant. | C092925<br><br>(Super. Ct. Nos.<br>19F7562, 19F7844, 20F61,<br>20F130, 20F2393) |

Defendant Jacob David Woolery pleaded no contest to receiving stolen property in four separate cases.  The trial court placed defendant on probation and ordered him to pay victim restitution in amounts to be determined.  Defendant subsequently pleaded no contest in a fifth case.  The trial court terminated defendant's probation and, after a hearing, imposed specific amounts of victim restitution.  On appeal, defendant challenges multiple aspects of the trial court's restitution orders.  In response to our request for supplemental briefing, defendant also argues that he is entitled to remand for the retroactive application of Senate Bill No. 567 (2021-2022 Reg. Sess.) (Stats. 2021, ch.

1

731, § 1.3) (Senate Bill 567).  We remand for the trial court to clarify the basis for the restitution award to B.W.  The judgment is otherwise affirmed.

FACTUAL AND PROCEDURAL HISTORY

Between December 2019 and January 2020, the district attorney filed four separate criminal complaints against defendant.  Defendant pleaded no contest to receiving stolen property (Pen. Code, § 496, subd. (a))[1] in case No. 19F7562, and to one count of receiving a stolen motor vehicle (§ 496d, subd. (a)) in each of the remaining three cases (case Nos. 19F7844, 20F61, 20F130).  The plea agreement stated that all remaining cases and charges were dismissed with a *Harvey*[2] waiver.

In March 2020, the trial court suspended imposition of defendant's sentence and placed him on formal probation for five years.  The trial court further ordered that defendant pay restitution to one victim in each of the four cases "in an amount reserved."  Defendant requested a restitution hearing to determine the specific amounts, and the trial court agreed to set the matter for hearing.

In June 2020, defendant pleaded no contest to receiving a stolen vehicle in a fifth case.  Defendant also admitted to violating the terms of his probation.  The trial court revoked probation and sentenced defendant to five years eight months in county jail, again reserving jurisdiction over victim restitution.

In October 2020, the trial court held a restitution hearing.  It received the restitution requests, documentary evidence to support the restitution claims, the probation department's recommendation, and it heard testimony from a victim, D.S., regarding portions of the restitution requested in two cases.  At the hearing, the trial court found the

---

[1]     Undesignated statutory references are to the Penal Code.

[2]     "The phrase '*Harvey* waiver' means the defendant has agreed that the court may consider facts behind dismissed or uncharged counts" for sentencing purposes.  (*In re Josh W.* (1997) 55 Cal.App.4th 1, 4, fn. 2; *People v. Harvey* (1979) 25 Cal.3d 754.)

amount of $44,478 for a boat and trailer was supported by the evidence. It further found that D.S. was entitled to $13,357.72 in restitution for damages to a marijuana extraction machine based on her testimony, but reserved jurisdiction to increase the amount. The trial court asked about the remaining items on the list, to which the prosecutor responded he was "not sure," and that the hearing was only requested as to the boat/trailer and the extraction machine. The parties agreed that the "only issues that were relevant" were the ones on which they heard testimony. The prosecutor stated he would get an order together and "ship it on over." The trial court reserved the order of restitution to all remaining victims and stated it would "make that order." Following the hearing, the trial court signed orders requiring that defendant pay $51,433.33 in restitution for the boat and trailer to B.W. (D.S.'s fiancé) in case No. 20F61. It further ordered defendant to pay $105,674.14 to D.S. in connection with the marijuana extraction device in case No. 19F7562.

In May 2021, the trial court held a second restitution hearing. Although defense counsel stated that defendant disagreed with the restitution requests, he admitted that he did not "have any information to directly contradict what [the victims were] asking for." The trial court said that it reviewed the documents submitted by the People and found that the restitution amounts requested were fair and that it would sign the restitution orders. Thereafter, it ordered defendant to pay $16,083.00 in restitution to S.M. in case No. 20F130 and $4,666.73 in restitution to G.C. in case No. 19F7844, which were equal to the amounts requested by the victims and the amounts recommended in the probation report.

DISCUSSION

I

*Trial Court's Authority to Award Restitution for Dismissed Charges*

Defendant first contends that the trial court erred by ordering him to pay restitution for B.W.'s boat and trailer in case No. 20F61, where the charge alleging boat

3

theft was dismissed pursuant to his plea deal without, he argues, a valid *Harvey* waiver. Defendant concedes his claim is likely forfeited, but argues his counsel was ineffective for failing to object to the imposition of victim restitution for B.W. We conclude that this challenge must be dismissed because defendant failed to obtain a certificate of probable cause as required by section 1237.5.

Section 1237.5 and California Rules of Court, rule 8.304(b) "allow an appeal from a judgment entered on a guilty [or no contest] plea only if (1) the defendant obtains a certificate of probable cause from the trial court or (2) the appeal falls within the two categories of grounds that do not require a certificate." (*People v. Buttram* (2003) 30 Cal.4th 773, 776.) As relevant here, one of those categories contains "postplea claims, including sentencing issues, that do not attack the validity of the plea." (*Ibid.*) However, an appeal that "attacks an integral part of the plea" is, "in substance, a challenge to the validity of the plea" that requires compliance with the probable cause certificate requirements of section 1237.5. (*People v. Panizzon* (1996) 13 Cal.4th 68, 72.) "In the absence of full compliance and a certificate of probable cause, the reviewing court may not reach the merits of any issue challenging the validity of the plea, but must order dismissal of the appeal. [Citation.]" (*People v. Puente* (2008) 165 Cal.App.4th 1143, 1149.) "Our Supreme Court has expressly disapproved the practice of applying the rule loosely in order to reach issues that would otherwise be precluded. [Citation.]" (*Ibid.*)

Here, the challenged *Harvey* waiver is a substantive term of defendant's plea agreement. Defendant was charged with a total of 17 counts in the four complaints yet was permitted to plead no contest to only four counts.[3] The plea agreement states: "Remaining cases dismissed with Harvey waiver" and "Remaining charges dismissed w/[H]arvey waiver." Defendant initialed next to these terms, and also initialed next to

---

[3] The trial court also dismissed five additional cases with a *Harvey* waiver at the plea hearing, though the substance of those cases is not clear from the record.

4

the statement: "I understand and agree that the sentencing judge may consider facts underlying dismissed counts to determine restitution and to sentence me on the counts to which I am entering a plea." At the plea hearing, defendant confirmed that he understood the terms and consequences of his agreement, and the trial court found that he knowingly and intelligently gave up his rights and was aware of the consequences of his plea.

By arguing his counsel was ineffective for failing to object to the "unlawful order of restitution on the basis that it was the product of dismissed counts without a valid *Harvey* waiver," defendant is challenging an integral term of his plea bargain, i.e., the validity of the *Harvey* waiver. Implicit in defendant's argument is his assertion that the plea was not voluntary or intelligent, either because he did not believe he agreed to a *Harvey* waiver, or because he did not understand that the *Harvey* waiver language permitted the trial court to order restitution for victims of the dismissed charges. Indeed, defendant does not here contend that the trial court abused its discretion through the *amount* of restitution ordered (though later, we address this alternative argument), but argues the trial court "lacked *authority* to impose restitution for [the] dismissed count" because the *Harvey* waiver was invalid. (Italics added.) As defendant's *Harvey* waiver was a material term of his plea bargain, and defendant challenges this integral part of the plea, he was required to obtain a certificate of probable cause to challenge the validity of his plea on appeal. (See *People v. Shelton* (2006) 37 Cal.4th 759, 770-771 [certificate of probable cause required where the defendant challenged the existence of the trial court's sentencing authority established by the plea].) Because defendant failed to do so, we will dismiss defendant's challenge to the trial court's authority to impose restitution on the dismissed count.

## II

### *Restitution to B.W. for the Boat and Trailer*

Defendant argues in the alternative that the trial court abused its discretion in fixing the amount of restitution it awarded to B.W. for his boat and trailer. He

specifically avers that the trial court erred by including in the restitution order (1) the $35,000 that B.W. recovered for his boat from a third party; and (2) the cost of B.W.'s trip to Missouri to purchase the boat before its theft.

      A.     *Applicable legal principles*

"The standard of review of a restitution order is abuse of discretion. 'A victim's restitution right is to be broadly and liberally construed.' [Citation.] ' "When there is a factual and rational basis for the amount of restitution ordered by the trial court, no abuse of discretion will be found by the reviewing court." ' [Citations.]" (*In re Johnny M.* (2002) 100 Cal.App.4th 1128, 1132.) "In reviewing the sufficiency of the evidence, the ' "power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted," to support the trial court's findings.' [Citations.] Further, the standard of proof at a restitution hearing is by a preponderance of the evidence, not proof beyond a reasonable doubt. [Citation.]" (*People v. Baker* (2005) 126 Cal.App.4th 463, 468-469.)

"[T]he court's discretion in setting the amount of restitution is broad, and it may use any rational method of fixing the amount of restitution as long as it is reasonably calculated to make the victim whole. [Citations.] . . . ' " ' " ". . . [S]entencing judges are given virtually unlimited discretion as to the kind of information they can consider and the source from whence it comes." [Citation.]' [Citation.] [¶] This is so because a hearing to establish the amount of restitution does not require the formalities of other phases of a criminal prosecution. [Citation.]" ' " (*People v. Baker, supra*, 126 Cal.App.4th at p. 470.) Indeed, "[s]ection 1202.4 does not, by its terms, require any particular kind of proof. However, the trial court is entitled to consider the probation report, and, as prima facie evidence of loss, may accept a property owner's statement made in the probation report about the value of stolen or damaged property." (*People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1543.) "Once the record contains evidence showing the victim suffered economic losses . . . , this showing establishes the amount of

6

restitution the victim is entitled to receive, unless challenged by the defendant." (*People v. Fulton* (2003) 109 Cal.App.4th 876, 886.)

B.      *Additional factual background*

D.S. submitted a restitution request for the boat and trailer in case No. 20F61 for $44,478, plus $6,300 for boat accessories, for a total of $50,778. B.W. submitted a similar restitution request, also seeking $44,478 for the boat and trailer, plus $6,868 for missing items from the boat, $200.65 for recovered or missing tools, and $815 for Department of Motor Vehicles fees, for a total of $52,361.65. Both claims were supported by numerous receipts. The probation officer recommended that defendant pay B.W. restitution in the amount of $52,361.65.

At the restitution hearing, D.S. testified that "we" (presumably, D.S. and B.W.) "gave [the boat] to a salvage company." When asked whether she was "compensated at all for the salvage," she responded, "Yes," saying she received $35,000. The trial court asked if she "include[d] this $35,000 salvage figure" in her written restitution request, and D.S. answered that they only received the money "a week ago." D.S. explained that the $44,478 figure did not take the $35,000 compensation into account, stating: "We just literally quote [*sic*], that money, like, a week ago. So, yeah, we didn't know we were going to. We didn't know if the insurance—because my insurance didn't cover anything, so we didn't know if we were going to recover anything. So when this list was given, we hadn't received anything. I don't even . . . think it was a week we finally got the settlement from them." D.S. further testified that she and B.W. spent $5,000 to travel to Missouri to purchase the boat.

Defense counsel objected to the $5,000 "shopping" cost and asked the trial court to reduce the requested amount by $35,000 because they "were compensated partially for their loss as a result of the salvage." The trial court initially found that $44,478 was "sustained by the evidence." In doing so, it found that $35,000 should not be subtracted from the restitution amount, saying that "the fact that there was recovery of some funds is

legally irrelevant." With respect to the $5,000 shopping cost, the court remarked that shopping was "a little trite" and explained, "The one thing I'm not finding to be properly ordered would be the amount that the victim's [*sic*], unfortunately, lost when they looked for and went by [*sic*] that boat from Missouri." The hearing transcript then reflects that "the clerk" asked, "3,000?" and the prosecutor responded, "I'll give it to you." The trial court said, "[W]e're going to need [to] tally this up," and the prosecutor offered to "get an order together and ship it on over."

  C. *Declining to offset $35,000*

  The parties correctly agree that *if* B.W. received the disputed $35,000 from an insurance company, he is entitled to still recover the full amount of loss without any offset for the insurance payment. Indeed, "it is settled that the trial court can order a defendant to pay the full amount of the victim's economic loss, notwithstanding that the victim has also been reimbursed by a third party source such as the victim's insurer." (*People v. Hume* (2011) 196 Cal.App.4th 990, 1000.) According to the People, D.S.'s testimony indicates that the $35,000 came from an insurance settlement. However, defendant interprets D.S.'s testimony to mean that B.W. received the payment from salvage, rather than an insurance company. Thus, defendant argues that B.W. is only entitled to the loss from the diminution in value, i.e., the value of the boat minus the $35,000; otherwise, he would obtain a $35,000 windfall.

  We agree that the record does not clearly reflect whether the $35,000 came from an insurance settlement or from salvage. As the record permits two reasonable interpretations, we cannot conclude that the trial court abused its discretion by including $35,000 in the restitution payment. Under the substantial evidence standard of review, "where two or more different inferences can reasonably be drawn from the evidence, [an appellate] court is without power to substitute its own inferences for those of the trial court and decide the case accordingly." (*Muzquiz v. City of Emeryville* (2000) 79 Cal.App.4th 1106, 1122.) Here, D.S. testified that she was "compensated . . . for the

8

salvage" with a $35,000 payment. But, when asked whether she subtracted $35,000 from her restitution request form, she explained that at the time she filled out the form, her insurance "didn't cover anything, so we didn't know if we were going to recover anything," but "we finally got the settlement from them." This statement could reasonably be understood to mean that B.W. and D.S. received $35,000 as an insurance settlement. And, our Supreme Court has made clear that insurance settlements are not properly subtracted from restitution awards, even where it permits a double recovery. (*People v. Birkett* (1999) 21 Cal.4th 226, 246 (*Birkett*).) The trial court accordingly acted within its discretion by declining to subtract $35,000, as an insurance payment, from the restitution order.

Moreover, even if the $35,000 payment came from salvage, the trial court would not have abused its discretion by including it in the restitution award. "Payments received by a crime victim from his or her insurance company *or from an independent third party* for economic losses suffered as a result of the defendant's criminal conduct cannot reduce the amount of restitution the defendant owes. [Citation.]" (*People v. Vasquez* (2010) 190 Cal.App.4th 1126, 1133-1134, italics added.) This is because, as our Supreme Court explained with regard to the probationary restitution statute, "the Legislature intended to require a probationary offender, for rehabilitative and deterrent purposes, to make *full* restitution for all losses *his crime had caused, and* that such reparation should go entirely to *the individual or entity the offender had directly wronged*, regardless of that victim's reimbursement from other sources." (*Birkett, supra*, 21 Cal.4th at p. 246, original italics.) While *Birkett* dealt with payments from insurance companies in the context of probationary restitution, its reasoning still applies here.[4] The

---

[4]     Amendments to the statute after *Birkett, supra*, 21 Cal.4th 226 "indicate the Legislature intended the same rehabilitative and deterrent purposes to apply to non-

Supreme Court in *Birkett* discerned the Legislature's broader intent from language in former section 1203.04, subdivision (a)(1), which nearly mirrors the relevant language found in the current restitution statute, section 1202.4. Specifically, section 1202.4 states, in language similar to former section 1203.04, subdivision (a)(1), that it is the "intent of the Legislature that a victim of crime who incurs an economic loss as a result of the commission of a crime shall receive restitution directly from a defendant convicted of that crime," and mandates that the court "shall order *full restitution*" and that, "[t]o the extent possible, the restitution order . . . shall be of a dollar amount that is sufficient to *fully reimburse* the victim or victims for every determined economic loss incurred *as the result of the defendant's criminal conduct . . . .*" (Italics added.) (§ 1202.4, subds. (a)(1), (f)(3); see also *Birkett*, at pp. 245-246, quoting section 1203.04, subds. (a)(1), (d).) Thus, the restitution statute indicates, as explained in *Birkett*, that the trial court is obligated to order full restitution of the monetary loss resulting from defendant's crime. This would naturally not include a reduction in restitution due to fortuitous third party payments.

Further, although victim compensation is an important purpose of victim restitution, "above and beyond victim compensation, restitution serves rehabilitative and deterrent purposes" (*People v. Hume, supra*, 196 Cal.App.4th at p. 1000), which further supports a finding that defendant must fully compensate B.W. for the loss he caused. Accordingly, to the extent the record suggests that the payment was from salvage rather from insurance, the trial court was still within its discretion to require that defendant pay the full value of the boat and trailer, i.e., the full monetary loss caused by his crime.

In reaching this conclusion, we note that *People v. Chappelone* (2010) 183 Cal.App.4th 1159, relied on by defendant, is distinguishable and therefore unpersuasive. In *Chappelone*, the defendants stole a variety of merchandise from a Target store.

---

probationary offenders as well. (Stats. 1995, ch. 313, § 5; [] § 1202.4, subd. (a)(1).)" (*People v. Hamilton* (2003) 114 Cal.App.4th 932, 941, fn. 9.)

(*Chappelone, supra*, at pp. 1162-1163.) The Court of Appeal held that the trial court erred by ordering restitution based on the full retail value of the stolen merchandise because much of the stolen goods were (prior to their theft) damaged, unsellable, and items that Target intended to donate for a fraction of the price or give away for free. (*Id.* at pp. 1177-1178.) And as there was "no evidence" of the profits Target would have generated from the sales of those products, the appellate court found that the trial court awarded Target a windfall by basing restitution on the full lost profits of the merchandise. (*Id.* at p. 1178.) Thus, unlike here, *Chappelone* addressed how to determine the value of a retailer's lost merchandise and based its holding in part on the lack of proffered evidence. Accordingly, that case does not compel a different result here.

D.  *Travel expenses to purchase boat*

Next, defendant argues the trial court erred by including $3,000 in the restitution award for the cost of the shopping trip for the boat, based on the clerk's reference to "3,000" at the restitution hearing. The People again read the record differently than defendant, asserting that the trial court did not ultimately include the cost of the trip in the restitution award. However, they concede that it is "unclear" how the trial court arrived at the total amount of $51,433.33 for the boat and trailer. We agree that the record is fairly inscrutable on this point.

"To facilitate appellate review of the trial court's restitution order, the trial court must take care to make a record of the restitution hearing, analyze the evidence presented, and make a clear statement of the calculation method used and how that method justifies the amount ordered." (*People v. Giordano* (2007) 42 Cal.4th 644, 664.) At the hearing, the trial court expressly found only the $44,478 for the boat and trailer was "sustained by the evidence." It also clearly signified that it did *not* wish to include the cost of the shopping trip in the restitution order, finding the $5,000 for shopping was "a little trite," and that "the amount that the victim's [*sic*] . . . lost when they looked for and went by [*sic*] that boat from Missouri" was not "properly ordered." However, the clerk

11

(according to the transcript) then immediately asked, "3,000?" and the prosecutor responded, "I'll give it to you." The prosecutor then agreed to prepare the restitution order after it was tallied up, and the trial court ultimately signed a restitution order for $51,433.33.

Based on this record, it is not clear what "3,000" is referencing, and it could be interpreted—as defendant sees it—to be a reduced amount of the requested $5,000 travel cost. Indeed, as the People concede, the numbers from B.W. and D.S.'s restitution requests cannot be combined in such a way to reach $51,433.33. Thus, the ambiguous reference to "3,000" at the hearing, combined with our inability to reach $51,433.33 through any tally, raises concerns that the prosecutor erroneously included $3,000 in travel costs in the restitution order after the trial court expressly disallowed it.[5] Because we cannot discern whether the restitution order incorrectly contains the disallowed travel expenses, we remand for the trial court to clarify the basis for the restitution award to B.W.[6]

III

*Restitution to D.S. for Marijuana Extraction Machine*

Defendant next contends that the trial court erred when it ordered defendant to pay for the damage to D.S.'s marijuana extraction machine. He asserts that because defendant was convicted of receiving stolen property, rather than theft or vandalization,

---

[5]     It also is possible that "3,000" referred to the trial court's finding that $3,357.72 for shipping the marijuana extraction machine to Ohio was an "appropriate amount," which also was discussed at that time. The prosecutor's response, "I'll give it to you," then, could have referred to the order he intended to prepare, which would contain the precise amount for the clerk's records.

[6]     As the trial court made clear that it was excluding travel costs from the restitution award, we need not address whether awarding such costs would be an abuse of discretion.

and there was no evidence that defendant proximately caused the damage, he cannot be required to pay for those damages.

"[T]he question of whether defendant was properly ordered to reimburse the Restitution Fund even though there may have been other, concurrent causes of the victim's [damages] is governed by the 'substantial factor' test for proximate cause of victim loss. [Citations.] ' " 'The substantial factor standard is a relatively broad one, requiring only that the contribution of the individual cause be more than negligible or theoretical.' [Citation.] Thus, 'a force which plays only an "infinitesimal" or "theoretical" part in bringing about injury, damage, or loss is not a substantial factor' [citation], but a very minor force that does cause harm is a substantial factor [citation]. This rule honors the principle of comparative fault." ' " (*People v. Lockwood* (2013) 214 Cal.App.4th 91, 102-103.)

Here, defendant pleaded no contest to receiving the extractor as stolen property. D.S.'s restitution request form asked for $10,000 for the damage to the machine, based on a verbal estimate. It also included invoices for $105,520.14, $8,550.88, $10,000, and $62,500 related to the purchase and shipment of the machine and its various parts. The probation report recommended $148,532.96 in restitution to D.S. for the machine.

At the hearing, D.S. testified that the 800-pound machine, which functions through a "complicated process," was undamaged prior to being stolen. However, she explained the machine was no longer operable after she recovered it because the scale did not work, and the sensors were "ripped out" of the machine. She stated that repairing the machine cost $13,357.72, comprised of the $10,000 repair plus $3,357.72 in shipping fees. Defense counsel argued that there was an "insufficient nexus" between defendant's plea to receiving stolen property and the damage to the machine. The trial court responded, "[A]s to the . . . extraction system, I am finding that $10,000 certainly is an amount that should be ordered," but reserved jurisdiction "because it's quite likely that the amount will be greater than that." The trial court also noted that "the way that the law is on these

13

receiving stolen property charges is depending on the defendant's actions and the character of the property itself," and that defendant was aware that "getting involved" with "a unique extraction system . . . is going to cause . . . substantial cost to the original owners." Finally, it found that $3,357.72 for shipping the machine to Ohio was "an appropriate amount, as well." It later signed an order awarding D.S. $105,674.14 in victim restitution.

Thus, the evidence reflects that the machine was not damaged prior to its theft, the machine was unique and complex, defendant received the stolen machine, and the machine was returned to D.S. with $13,357.72 in damages. This is sufficient to create a nexus, which is more than infinitesimal or theoretical, between defendant's criminal conduct and D.S.'s losses, even if there were multiple factors that may have caused the damage. The trial court therefore did not err in finding D.S. was entitled to restitution for the damage to the machine.

Further, defendant's argument relies solely on two cases, which have since been disapproved. Defendant cites to *People v. Scroggins* (1987) 191 Cal.App.3d 502 and *In re Maxwell C.* (1984) 159 Cal.App.3d 263 for the proposition that for restitution to be proper, a defendant must have the same state of mind for the offense and for the act resulting in restitution. Thus, he contends that because the state of mind for damaging property is different than that required for receiving stolen property, a defendant who receives stolen property cannot be made to pay for any damage to that property. However, the basis for the holdings in both cases is taken from *People v. Richards* (1976) 17 Cal.3d 614, which was later rejected in *People v. Carbajal* (1995) 10 Cal.4th 1114, 1126. (*Maxwell C., supra*, at pp. 265-266, citing *Richards, supra*, at p. 622; *Scroggins, supra*, 191 Cal.App.3d at pp. 505-507, citing *Richards*, at pp. 619-620, 622.) In *Carbajal*, our Supreme Court stated: "[I]nsofar as *Richards* may be read to require that trial courts refrain from conditioning probation on restitution 'unless the act for which the defendant is ordered to make restitution was committed with the same state of mind as

14

the offense of which he was convicted . . .' [citation], we disapprove it." (*Carbajal, supra*, at p. 1126.)

As the basis for the relevant holding in *Maxwell C*. and *Scroggins* have been impliedly overruled, these cases are not persuasive.

IV

*Authority to Calculate Loss, Method of Calculation, and Oral Pronouncement*

Defendant next advances several arguments challenging the manner in which the trial court calculated and pronounced the restitution awards, which we address in turn.

A. *Prosecutor's preparation of the restitution orders*

Defendant first contends the trial court improperly delegated the determination of the loss amounts to the prosecutor. Acknowledging defense counsel did not object on this basis, defendant first argues that the issue was not forfeited because it presents a purely legal question, specifically, whether a trial court may delegate the "tally" of restitution to the prosecutor. We find the issue forfeited.

Defense counsel failed to object to the manner in which the trial court calculated the restitution award. "[C]omplaints about the manner in which the trial court exercises its sentencing discretion and articulates its supporting reasons cannot be raised for the first time on appeal." (*People v. Scott* (1994) 9 Cal.4th 331, 356.) This forfeiture rule also applies to restitution orders. (See, e.g., *People v. O'Neal* (2004) 122 Cal.App.4th 817, 820; *People v. Le* (1995) 39 Cal.App.4th 1518, 1523.) " 'In essence, claims deemed [forfeited] on appeal involve sentences which, though otherwise permitted by law, were imposed in a procedurally or factually flawed manner' " (*People v. Valtakis* (2003) 105 Cal.App.4th 1066, 1072), which is precisely what defendant claims here. Accordingly, the forfeiture exception that defendant urges us to apply is inapt, as he does not raise a pure question of law but rather argues the imposition of restitution fees was procedurally and factually flawed through the prosecutor's improperly drafted and potentially

15

unsupported restitution orders. Defendant's claim is accordingly forfeited. (See *People v. McCullough* (2013) 56 Cal.4th 589, 599.)

Recognizing that his claim is perhaps forfeited, defendant argues in the alternative that his counsel was deficient for failing to object to the prosecutor's preparation of the restitution orders. We reject defendant's claim, as the trial court did not improperly delegate its sentencing authority.

To prevail on a claim of ineffective assistance of counsel, defendant must prove that (1) trial counsel's representation was deficient because it fell below an objective standard of reasonableness under prevailing professional norms; and (2) the deficiency resulted in prejudice to defendant. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 693-694 [80 L.Ed.2d 674, 693-694, 697-698]; *People v. Ledesma* (1987) 43 Cal.3d 171, 216-218.) Defendant must show that there is " 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " (*People v. Maury* (2003) 30 Cal.4th 342, 389.)

Here, the trial court received extensive written documentation of the victims' restitution claims. It also heard testimony from D.S. regarding the cost of the boat and trailer, as well as the extraction machine. At that hearing, defense counsel objected to parts of the claimed restitution, as discussed *ante*, but did not make any other challenges or submit any evidence to contradict D.S. and B.W.'s claims. The trial court accepted the evidence, said, "[W]e're going to need [to] tally this up," and the prosecutor offered to "get an order together and ship it on over." At the second restitution hearing for the remaining two victims, defense counsel admitted that he did not "have any information to directly contradict what they're asking for." The trial court stated that it had reviewed the documentary evidence, found the restitution requests to be fair, and said it was "going to order and sign the orders for restitution in all of your cases." Ultimately, the trial court

16

signed four restitution orders for amounts that were equal to or less than what the victims requested, and equal to or less than what the probation report recommended.[7]

Accordingly, the trial court did not delegate its authority to determine the proper amount of victim restitution to the prosecutor. Rather, the trial court accepted evidence, gave defense counsel the opportunity to challenge the evidence, and made its findings. The trial court signed orders for restitution within the range of requested amounts supported by the evidence. This is well within its discretionary powers. (*People v. Keichler* (2005) 129 Cal.App.4th 1039, 1048 ["Absent a challenge by the defendant, an award of the amount specified in the probation report is not an abuse of discretion"].) Thus, although the trial court may have asked the prosecutor to prepare an order based on its findings, it did not delegate its discretionary *authority* to the prosecutor. Defense counsel therefore had no basis to object to the prosecutor's draft orders. As defense counsel is not required to make futile objections, defendant has failed to show his counsel was ineffective for failing to object. (*People v. Price* (1991) 1 Cal.4th 324, 386-387.)

Similarly, defendant cannot show prejudice, as it is not reasonably likely that the trial court would have ordered less restitution had defense counsel objected to the draft orders where, as here, the restitution amounts were supported by the evidence and, in the case of D.S. and B.W., substantially less than the amounts requested by the victims and recommended by the probation report.

Finally, we note that this case is factually distinct from *People v. Cervantes* (1984) 154 Cal.App.3d 353, cited by defendant. In *Cervantes*, the trial court ordered the defendant to "pay restitution in an amount and manner to be determined by the probation officer" (*Cervantes, supra*, at p. 361), granting the probation officer "sole discretion" to determine the total restitution owed by the defendant. (*Ibid.*) The appellate court held

---

[7]     Indeed, the restitution orders were far lower than the total amount of $361,543.11 sought by D.S.

17

that this was an improper delegation of power. (*Id*. at pp. 357-361.) Here, by contrast, the record reflects that the trial court, not the prosecutor, determined the proper amount of restitution based on the evidence presented. At no point did it instruct the prosecutor to exercise his own discretion to determine the proper amount of restitution. We accordingly find defense counsel was not ineffective.

### B. *Methodology for calculation and oral pronouncement*

Next, defendant argues the trial court erred by failing to explain the method it used to calculate victim restitution, and by failing to orally pronounce the restitution orders. Defense counsel did not object on either ground. Accordingly, both arguments are forfeited. (*People v. Gonzalez* (2003) 31 Cal.4th 745, 751 ["A party in a criminal case may not, on appeal, raise 'claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices' if the party did not object to the sentence at trial"].)

On reply, defendant argues that a trial court's failure to orally pronounce a restitution award may not be forfeited on appeal. However, the cases he relies upon do not support this contention. Specifically, in *People v. Nieves* (2021) 11 Cal.5th 404, the Supreme Court found that the defendant did not forfeit her constitutional right to be present for sentencing in a capital case through a voluntary, knowing, and intelligent waiver. (*Id*. at p. 508.) In *People v. Leon* (2020) 8 Cal.5th 831, the Supreme Court found the defendant did not forfeit his challenge to a restitution fine where the subject of restitution was not raised at the hearing, and thus the defendant had no opportunity to object. (*Id*. at p. 854.) Neither case suggests that a defendant cannot forfeit a trial court's failure to orally pronounce a restitution order after a restitution hearing. As defendant had ample opportunity to ask the trial court to provide its methodology and orally pronounce the restitution awards, yet failed to do so, defendant's arguments are forfeited on appeal.

18

C.      *Ability to pay*

Defendant next argues that we should stay all the restitution orders pending an ability to pay hearing.  In doing so, defendant seeks to extend the holding in *People v. Dueñas* (2019) 30 Cal.App.5th 1157 to victim restitution.  *Dueñas* held that "due process of law requires the trial court to conduct an ability to pay hearing and ascertain a defendant's present ability to pay before it imposes court facilities and court operations assessments under [] section 1465.8 and Government Code section 70373." (*Dueñas, supra*, at p. 1164.)  The *Dueñas* court also held that "although [] section 1202.4 bars consideration of a defendant's ability to pay unless the judge is considering increasing the fee over the statutory minimum, the execution of any restitution fine imposed under this statute must be stayed unless and until the trial court holds an ability to pay hearing and concludes that the defendant has the present ability to pay the restitution fine." (*Dueñas*, at p. 1164.)  Despite acknowledging that multiple appellate courts, including this one, have held that *Dueñas* (even if correctly decided) does not apply to victim restitution, defendant asks that we reconsider those holdings.

At the outset, we conclude that defendant's claim is forfeited.  Defendant did not object to the imposition of victim restitution based on his ability to pay.  "In general, a defendant who fails to object to the imposition of fines, fees, and assessments at sentencing forfeits the right to challenge those fines, fees, and assessments on appeal. [Citations.]" (*People v. Greeley* (2021) 70 Cal.App.5th 609, 624, review den. Jan. 5, 2022, S272033.)  Defendant was sentenced and the restitution hearings were held well after the publication of *Dueñas*.  There is no reason why defendant could not have requested an ability to pay hearing based on *Dueñas*.  By failing to do so, defendant forfeited the issue on appeal. (*People v. Abrahamian* (2020) 45 Cal.App.5th 314, 338 [claim that *Dueñas* applies to victim restitution was forfeited for failure to raise in trial court]; *People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1153-1155 [same].)

D.      *Senate Bill 567*

19

Finally, defendant argues in supplemental briefing that he is entitled to resentencing under Senate Bill 567 because the trial court sentenced him to the upper term of three years as part of his five-year eight-month sentence. We disagree. On October 8, 2021, the Governor signed Senate Bill 567 into law. Senate Bill 567 became effective January 1, 2022, and made changes affecting the trial court's sentencing discretion. (Cal. Const., art. IV, § 8, subd. (c).) We solicited supplemental briefing from the parties on how this new law affects defendant's sentence.

As relevant here, Senate Bill 567 generally limits the trial court's ability to impose the upper-term sentence unless aggravating circumstances that justify the imposition of a term in excess of the middle term have been stipulated to by the defendant or found true beyond a reasonable doubt by a jury or the judge in a court trial. (§ 1170, subd. (b)(1)-(2).)

Defendant argues the case should be remanded for resentencing. In doing so, he notes the potential ambiguity in the record regarding whether the plea was open or stipulated, but argues that either way, he is entitled to resentencing. The People agree that Senate Bill 567 applies retroactively, but argue the law does not benefit defendant because he stipulated to the sentence he received and the court lacks discretion to change that sentence. We agree with the parties that Senate Bill 567 applies retroactively to defendant's case. (*People v. Flores* (2022) 75 Cal.App.5th 495, 500.) However, because the record reflects that the parties entered into a plea agreement for a stipulated term, we conclude that Senate Bill 567 does not impact defendant's sentence. Accordingly, defendant is not entitled to remand.

We find the logic of *People v. Brooks* (2020) 58 Cal.App.5th 1099 persuasive. There, the defendant agreed to a stipulated sentence in a plea agreement. (*Id.* at p. 1102.) After he was sentenced, the Legislature enacted section 1170.91, which retroactively required the trial court to consider trauma the defendant suffered as a result of military service as a factor in mitigation when imposing a sentence under section 1170. (*Brooks,*

*supra*, at pp. 1102-1103.) The trial court denied the defendant's petition to recall his sentence pursuant to this new law, finding it had no power to resentence him because he had agreed to a stipulated term in his plea agreement. (*Ibid*.) The appellate court affirmed. (*Id*. at p. 1110.) The appellate court concluded because the defendant stipulated to the term of his sentence in his plea agreement, the trial court did not apply judicial discretion at the time it sentenced him and it had no discretion on resentencing, because to do so would unlawfully modify the terms of his plea agreement. (*Id*. at pp. 1106-1107.) Once the trial court accepted the plea agreement, it was required to impose a sentence within the limits of that plea bargain. (*Id*. at p. 1106.) As a result, when the court sentences the defendant to that stipulated term, it is not exercising its triad sentencing discretion. (*Id*. at p. 1107.) Put another way, " 'when a trial court sentences a defendant who has agreed to a stipulated sentence for a term of years, the trial court exercises no discretion to decide between an upper, middle and lower term and may not consider factors in mitigation and aggravation. Therefore, the trial court is not "imposing a term under subdivision (b) of Section 1170." (§ 1170.91, subd. (a).)' " (*Brooks*, at p. 1109.)

Here, the record shows that the trial court sentenced defendant pursuant to his agreement to a stipulated sentence of five years eight months, which included an upper term sentence of three years. Specifically, at the June 18, 2020 sentencing hearing, defendant entered a plea of no contest to count 2 in his fifth case (case No. 20F2393) and admitted to violating probation. The trial court explained that the agreement would result in a jail term of "eight months in addition to whatever sentence [defendant is ] presently facing," and that the new case would "add to [defendant's] possible exposure." Defense counsel then interjected, "We've agreed to five years on the old cases for five years, eight months." The trial court observed that the sentence broke down to one three-year term plus four eight-month terms, and said, "That's the aggravated term. And that's what your exposure is, five years, eight months . . . . That is the possible consequence of entering

into this change of plea." The trial court asked if defendant understood the rights he would give up by entering a plea, and then explained, "[T]his plea today . . . tacks on the potential for eight more months onto a sentence. Were you going to ask for a sentencing hearing, or is this just a flat-out agreement to five years, eight months?" Both attorneys responded that it was a "flat-out agreement." The trial court said, "Based on the agreement of the parties, [defendant] is sentenced to the aggravated term on Count One [in case no. 20F130]. That would be three years." The trial court accepted that plea agreement and did not exercise its discretion to impose the lower, middle, or upper-term sentence under section 1170, subdivision (b). Rather, the trial court had no discretion but to sentence defendant to the agreed-upon term. Because defendant was not sentenced under section 1170, subdivision (b), the retroactive changes brought about by the enactment of Senate Bill 567 do not affect his sentence. We conclude the imposition of an upper-term sentence remains proper.

In reaching this conclusion, we acknowledge that the plea form, signed by defendant in February 2020, does not expressly indicate that the parties stipulated to a sentence. Further, at the original plea hearing in February 2020, the trial court explained that defendant "could receive up to five years in local jail" if he violated probation. And, at the June 2020 hearing, as set forth above, the trial court referenced the "possible consequence" to defendant's sentence if he changed his plea. Nonetheless, both attorneys made clear thereafter that they reached a "flat-out agreement" to the sentence, including the upper term of three years, and that a sentencing hearing was therefore unnecessary. The trial court repeated this "agreement . . . to the aggravated term on Count One," and defense counsel did not object. Accordingly, the record adequately reflects that defendant entered into a plea for a stipulated term, and remand for resentencing pursuant Senate Bill 567 is not required.

## DISPOSITION

The matter is remanded for the trial court to clarify the basis for the order of restitution to B.W.  In all other respects, the judgment is affirmed.


                                                _____KRAUSE_____, J.


We concur:


_____ROBIE_____, Acting P. J.


_____HULL_____, J.